## HOLCROFT and Others *v.* HUNTER.

*A.* was *B.*'s surety for a debt due to *C.*  To secure *A.* as to his suretyship, *B.* assigned to him a land office certificate, taking from him a bond for a re-conveyance, on re-payment, &c.  *A.* paid the debt to *C.*, and, afterwards, sold and transferred the certificate to *D.*, who had notice of *B.*'s equity.  *Held,* that *B.* had a right, in equity, to redeem, &c.

3b 147
153  672

ERROR to the *Harrison* Circuit Court.  *David Hunter* was the complainant in the Circuit Court, and *Nathaniel Holcroft, Ephraim W. Bentley,* and *Ezekiel W. Bentley,* were the defendants.

M'KINNEY, J.—This is a suit in chancery to enjoin a judgment at law, and obtain a re-conveyance of land.  The complainant .

states, in substance, that in the year ———, he was indebted to *John Holcroft*, in *Pennsylvania*, and that the defendant, *Nathaniel Holcroft*, became his surety; that in the year 1817, about descending the *Ohio* river on a trading voyage, the defendant, *Nathaniel Holcroft*, proposed, as he was in debt and his return uncertain, he should secure him against the debt due to *John Holcroft;* that the complainant, to effect this, assigned to him a land certificate worth 500 or 600 dollars, it being for the south east quarter of section 23, township 5, range 4 east, in the Jefferson land district, and received from him a bond, dated 17th *April*, 1817, conditioned, "that if *Nathaniel Holcroft* shall transfer to *David Hunter*, (complainant,) the above described certificate, and also pay the full amount to the *United States*, due upon said quarter of land, upon said *David Hunter* paying said *Nathaniel Holcroft* 270 dollars on or before the 1st *July*, 1818, with lawful interest from date, then the obligation to be void." He charges that the defendant, *Nathaniel Holcroft*, surrendered the said certificate to the land office, and received a certificate of further credit; that he paid *John Holcroft* 50 dollars, and has since paid, at different times, upwards of 100 dollars on the note executed by the defendant *Nathaniel* and himself, to said *John Holcroft;* that he left the defendant's bond, when he went down the river, in the hands of *James W. Gaither*, his brother-in-law, with the request that he would advance the money due to *John Holcroft*, and save the land; that during his absence, *Gaither* called on the defendant, *Nathaniel*, and informed him he had a sum of money sufficient to discharge all demands he had against the complainant; that the defendant, *Nathaniel*, refused to receive the money, and assign the certificate to said *Gaither* and one *Marshal Hunter*, or to *Patrick Hunter*, complainant's father. The bill states that the defendant, *Nathaniel*, assured the complainant that if he assigned the certificate to him, he would not interrupt *Patrick Hunter*, complainant's father, then in the peaceable possession of the land; that he was acting for complainant's father, and in the event of accident to complainant during his absence, he might secure the land to his father; that complainant, subsequently confiding in the friendship and integrity of the defendant, about descending the *Ohio* river, at the defendant's request left, with the wife of the defendant, the bond above described; that the defendant, *Nathaniel*, afterwards sold said land to the defendants, *Ephraim W.*

*Bentley* and *Ezekiel W. Bentley*, both of whom are charged to have been apprized of the above facts; that the purchasers of the land, the defendants *Bentleys*, have since instituted an action of disseisin, in the *Harrison* Circuit Court, against *Patrick Hunter*, complainant's father, the tenant in possession, for the recovery of said land; that complainant was permitted to be made defendant thereto, and that at the present term of said Circuit Court, the said defendants recovered judgment against them, and will eject them from the same, unless restrained, &c.; that the complainant is not, except as above, indebted to the said *Nathaniel*; and that he has paid large sums of money, in defending the action of disseisin.

Prayer that the injunction granted be made perpetual, the defendants be decreed to re-convey to him the said land, and refund the costs he has paid in the action of disseisin, &c.

The defendant, *Holcroft*, by his answer, admits the assignment of the certificate as charged, his having surrendered it and received a certificate of further credit, and the execution of the bond, at the time charged in the bill. He states, that the real consideration was his liability as the complainant's surety, on a note to *John Holcroft*, dated 30th of *March*, 1816, for 303 dollars and 83 cents; that the complainant paid on the note 50 dollars, which was endorsed; that he afterwards paid the note, and that the complainant has since made the following payments: 25th *December*, 1819, 30 dollars; 1st *September*, 1821, 35 dollars; 7th *April*, 1824, 16 dollars; 17th *September*, 1824, 24 dollars; which are all the payments made by the complainant. He admits *Gaither's* having called on him in 1818 or 1819, and having informed him that he had his bond to the complainant, and that he had a sum of money, but that *Gaither* did not show the bond, or tender the money unconditionally; that *Gaither* offered to pay him whatever was due from the complainant, if he would assign to him and *Marshal Hunter* the certificate for the land, which he declined doing; *Gaither* not pretending that the land belonged to him and *Marshal Hunter*. He says the complainant left the bond with him, in *July*, 1820, with the understanding that he was to do with the land what he thought proper and right, and admits a trust in honour to account for any surplus, after paying the debt. He also admits he sold the land to the other defendants for 300 dollars, but says that he would, prior to said sale, have transferred to the complainant

or his order, the certificate, upon payment of the debt, and was at all times ready to do so. He admits the action of disseisin, and the judgment in the same.

The defendants, *Ephraim W.* and *Ezekiel W. Bentley,* by plea and answer, say, that on the 30th *March,* 1825, they purchased the land described in the bill, for a full and valuable consideration, viz. 300 dollars,—and on the day of the purchase, received an assignment from the defendant, *Holcroft,* of the certificate of entry, without notice of the equity pretended in the complainant's bill. By their answer, they deny knowledge or notice of the complainant's claim, until after the purchase.

The cause was submitted to the Circuit Court, on bill, answers, exhibits, and depositions. That Court decreed, that the defendants, *Ezekiel W. Bentley* and *Ephraim W. Bentley,* should re-assign the certificate for the land, described in the bill, to the complainant; that the note executed by the complainant, as principal, and *Nathaniel Holcroft,* surety, should be delivered up to the complainant, a copy thereof being left on file; that the injunction be made perpetual, and that the complainant pay the costs of this suit, and the costs in the action of disseisin.

From the case presented, it appears that the complainant, to indemnify his surety, assigned to him a certificate for a quarter section of land, upon which the father of the complainant resided: that this was the inducement to the assignment, is shown by the bill, admissions, and proofs. If such be the fact, parol testimony would be admissible to show the true nature of the transaction, and to restrain the transfer to its proper limits. *Day* v. *Dunham,* 2 Johns. Ch. R. 189.—*Strong* v. *Stewart,* 4 ib. 167.—*James* v. *Johnson,* 6 ib. 417.—*Henry* v. *Davis,* 7 ib. 40.

The assignment is not, however, dependent upon this class of testimony. A bond, executed by the assignee on the day of the assignment, discloses the intentions of the parties, and the object of the transfer. By the condition of the bond, the certificate was to be re-assigned to the complainant on the payment of a specific sum of money, and the defendant, *Holcroft,* in his answer states, that that sum was the amount of his liability as complainant's surety. The execution of the bond would therefore, agreeably to a course of decisions, clothe the assignment with the incidents of a mortgage, and enable the redemption of the land by the assignor, unless opposed by the interests of innocent purchasers. *Manlove* v. *Ball,* 2 Vern. 84.—1 Madd. 517.

OF THE STATE OF INDIANA.

151

Nov. Term,
1832.

HOLCROFT
v.
HUNTER.

Although the assignment was thus originally intended as a security in the nature of a mortgage, and must be so viewed, the re-delivery of the bond to the obligor, unless explained, would indicate an abandonment of the right to redeem, on the part of the complainant. This idea of abandonment is however repelled, not only by the testimony, but by the admissions of the defendant, *Holcroft*, in his answer. He admits the bond to have been re-delivered in *July*, 1820, and his view of the effect of the re-delivery, does not conflict with that of the complainant, since after possession of the bond was obtained, he acknowledges payments to have been made by the complainant on the note, during the succeeding years, up to *September*, 1824. It would be repugnant to every principle of justice, whatever were the circumstances by which the defendant, *Holcroft*, obtained possession of the bond, that he should be permitted to regard the assignment as an absolute sale, discharging the amount due on the note, and at the same time treat the debt as subsisting, to pay which the assignment was made. He could not be entitled to both the land and the debt. He is concluded by his election, to treat the land as subject to be redeemed. As a security in the nature of a mortgage, the interest of the complainant could only be divested by his own act, or by the judgment of a competent tribunal. Neither of these having occurred, the right to redeem continues, unless opposed by a sale to innocent purchasers.

It is then material to inquire if the defendants, *Ezekiel W. Bentley* and *Ephraim W. Bentley*, who purchased in 1825 of the defendant, *Holcroft*, are such purchasers. If they are, they are protected. They allege, by plea and answer, that the purchase was made for a full and valuable consideration, and deny notice of the equity charged in the bill, until after the purchase. This denial is not sufficient. They cease to be protected and regarded as innocent purchasers, if after the purchase, but before payment of the purchase-money, they received notice. *Harrison* v. *Southcote*, 1 Atk. Rep. 538.—*Story* v. *Ld. Windsor*, 2 ib. 630.—*Frost* v. *Beekman*, 1 Johns. Ch. Rep. 288, 301.—*Murray* v. *Finster*, 2 ib. 155.—*Jewett* v. *Palmer*, 7 ib. 65. They do not state that the purchase-money has ever been paid, nor can we infer that fact from the statement, that the purchase was made for a full and valuable consideration. The payment of the purchase-money is not necessarily simultaneous

with the purchase. If the payment was to be made at a future day, and notice of an existing equity be received before such payment, the vendee would be justified in withholding payment until the settlement of the conflicting equity. Tested by this principle, the defence of the *Bentleys* is obviously insufficient.

Exclusive, however, of the objection to the plea and answer of the purchasers, the testimony of two of the witnesses, *Cook* and *Duggins*, establishes the fact that the defendants had by their own admission actual notice of the complainant's equity, and that the purchase was made with a willingness for a struggle. One of the witnesses states *Ezekiel W. Bentley's* admission of the complainant's equity, in general terms, without fixing it either before or after the purchase. The other is more definite, and gives his admission of a knowledge of the equity charged, prior to the purchase. If notice was thus possessed, the purchase and payments, if made, were in their own wrong. The law recognizes a notice to be either actual or legal. From the whole case it is apparent that the complainant, by his tenant, *Patrick Hunter*, was in uninterrupted possession of the land, from the assignment of the certificate to the institution of the action of disseisin. In the case of *Lessee of Billington* v. *Welsh*, 5 Binn. 129, *Tilgham*, C. J. speaking of notices, actual and legal, says,—"These legal notices, being sometimes contrary to the fact, are confined to cases in which violent presumption of actual notice arises. The undisturbed possession of land has generally been considered as legal notice; because the fact of possession being notorious, it is sufficient to put the purchaser on his guard, and to induce him to inquire into the title of the possessor. But to entitle the bare possession to such weight, it ought to be a clear, unequivocal possession." In this case, the purchasers obtain, not a legal title, from one in possession of the land, but an inchoate and imperfect title, from one without possession. Ordinary diligence would surely have prompted inquiry, and inquiry must have resulted in information of the complainant's equity. The defendants then, having both actual and legal notice of the complainant's equity, cannot claim protection. The interest of the complainant in the land is, therefore, unaffected by the sale made by the defendant, *Holcroft*, to the other defendants.

Upon tendering the amount due to the defendant, *Holcroft*, he having paid the note to *John Holcroft*, the complainant is

entitled to a decree for the land. · This he has done, having
tendered and left in Court 360 dollars and 81¼ cents, the amount
agreed upon by the parties, as the principal and interest due
on the note to *John Holcroft.*·

We are therefore of opinion, that the decree of the Circuit
Court be affirmed, except so far as relates to the costs below in
this suit, and the costs in the action of disseisin, and that those
costs be paid equally by the defendant, *Holcroft,* and the defend-
ants, *Ezekiel W. Bentley* and *Ephraim W. Bentley.*

*Per Curiam.*—The decree is affirmed, except, &c. with costs.

*C. Dewey* and *I. Howk,* for the plaintiffs.·

*J. H. Thompson,* for the defendant.