## BELL and Another *v.* LONGWORTH and Another.

When a person enters upon land, under color of title by deed or other written instrument, and occupies and improves it, he acquires in law actual possession to the extent of the boundaries contained in the writing, and this though the title conveyed to him by the deed is good for nothing.

To constitute color of title it is not essential that the title should appear *prima facie* to be good.

An adverse title founded upon naked possession is limited to the particular land over which the party exercises palpable and continuous acts of ownership.

But where a party is in possession of land under and in pursuance of a state of facts which of themselves show the character and extent of his entry and claim, such facts constitute color of title, and are constructive notice to the world of the character and extent of the claim.

Action by *Longworth* for forcible entry and detainer. It appeared that *A.* and *B.*, in 1817, purchased a quarter-section of land of the *United States*, at 2 dollars per acre, paying in hand a fourth of the purchase-money, and receiving a credit for the residue. In 1820 they assigned their interest in the purchase to *C.* and *D.*, partners in the mercantile business in *Cincinnati*—*D.* residing in *Cincinnati*, but *C.* elsewhere. The firm having failed in business, and being indebted to *Longworth*, of *Cincinnati*, in order to pay the debt to him, or a part of it, *D.* sold the interest of the firm in the land to *Longworth*, and to convey it, executed an instrument as follows: For value received, we hereby assign to *Nicholas Longworth*, of, &c., all our right and claim to, &c., (describing the quarter-section,) as witness our hands this 22d day of *September*, 1821. *C.* and *D.*, by the acting partner *D.* The instrument was attested by a witness. At this time the tract was unenclosed and covered with an unbroken forest. In 1822, *Longworth* appointed an agent to take charge of his purchase, and had ever afterwards continued the agency; the agent had constantly resided on or near the land; he had cut timber over the whole of it, and prevented others from cutting, warned people off of it, and employed other persons to watch trespassers and keep them off. He had paid the taxes on the tract; leased parts of it to different persons, &c.; but the whole tract was never enclosed; but it had been known even by the oldest inhabitants as the *Longworth* tract. In 1825, payment was made to the *United States* of the residue of the purchase-money, but there not having been forwarded to the land-office an assignment of the certificate given to *A.* and *B.*, the receipt and patent issued nominally to them. There was evidence

| 6 | 273 |
| 127 | 201 |
| 127 | 292 |
| 6 | 273 |
| 135 | 252 |
| 136 | 657 |
| 6 | 273 |
| 166 | 334 |

tending to prove that the defendants knew the land belonged to *Longworth;* that it was in charge of his agent, and parcels of it in possession of his tenants; and that, with this knowledge, in *January,* 1852, they entered upon a portion of the cultivated part, commenced fencing it, working night and day, surrounded by a force, some of it armed, sufficient to repel opposition; and by threats, &c., did repel *Longworth's* agents from their attempts to remove their fence. The defendants claimed the right to enter upon the land by virtue of deeds from some of the heirs of *C.,* executed to them in 1851.

*Held,* that *Longworth* went into possession under color of title.

*Held,* also, that his possession covered the whole tract.

*Held,* also, that his possession for more than twenty years had perfected his title.

*Held,* also, that the jury were authorized to infer from the evidence a forcible entry and detainer.

APPEAL from the *Vanderburgh* Circuit Court.

PERKINS, J.—*Longworth* and *Miles* commenced an action of forcible entry and detainer against *Bell* and *Kiger,* before two justices of the peace, charging them with forcibly and unlawfully taking and detaining the possession of the south-west quarter of section twenty, in township six south, of range ten west, in the *Vincennes* land district. An appeal transferred the cause to the Circuit Court, where there was a jury trial upon the general issue, verdict for the plaintiffs, and, after the usual motions to prevent, a judgment for restitution, &c., on the verdict.

It appears that the land in question was purchased of the *United States* by *Harrison* and *Beaman,* in 1817, at the price of 2 dollars per acre, they paying down one-fourth of the purchase-money, and receiving, as then allowed by law, a credit for the remaining three-fourths; that in 1820 *Harrison* and *Beaman* assigned their interest in said purchase to *Paxon* and *Pearson,* merchants doing business in *Cincinnati, Ohio,* though *Paxon* resided elsewhere; that said *Paxon* and *Pearson* failed in business, being, at the time, indebted to *Nicholas Longworth,* of *Cincinnati,* in a sum exceeding 3,000 dollars; and that, to pay said indebtedness, or a part thereof, *Pearson,* the acting partner, residing in *Cincinnati,* sold the interest of said firm in the land in question to said *Longworth,* and, to convey it, executed to him the following instrument:

"For value received, we hereby assign to *Nicholas Longworth,* of *Cincinnati,* all our right and claim to the south-

west quarter of section twenty, township six south, range ten west, in the district of *Vincennes*, as witness our hands this 22d day of *September*, 1821. *Charles Paxon* and *Elijah Pearson*, by the acting partner, *E. Pearson*. Signed and acknowledged in the presence of *Peyton S. Symmes*, register land-office, *Cincinnati*."

The quarter-section was, at this date, an unenclosed, unbroken forest.

It further appears that in 1822 *Longworth* appointed an agent to take charge of his purchase, and has since continued the agency uninterrupted; that the agent has resided near or upon the land, which is situate adjoining *Evansville*, in this state; that, in the language of one of the witnesses, "the whole quarter-section was included in his agency; he cut timber over it, prevented others from cutting, warned people off of it, and employed other persons to watch trespassers and keep them off." He paid the taxes upon the quarter, leased portions of it to different individuals, by whom some clearing and fencing were done; but the whole tract was never enclosed; though the oldest inhabitants of the vicinity say it had always been called and known amongst them as *Longworth's* quarter. It also appears that in 1825 payment was made to the *United States* of the purchase-money then unpaid upon the quarter; but there not being forwarded to the land-office an assignment of the certificate given to *Harrison* and *Beaman*, the original purchasers, and by them assigned to *Paxon* and *Pearson*, the receipt and patent issued nominally to the persons last named. The record shows, likewise, a conveyance by *Longworth* of the undivided half of said quarter to *Miles*. Such is the evidence of title respectively in those two persons.

As to the entry upon and detainer of the land by *Bell* and *Kiger*, there was evidence tending to prove that they knew it belonged to, or was claimed by, *Longworth*; that it was in charge of his agent, and patches of it in possession of his tenants; and that, with this knowledge, in *January*, 1852, they entered upon a portion of the cultivated part of the section, commenced fencing it, working

night and day, surrounded by a force, some of it armed, sufficient to repel any persons that might interfere with them; and which, by threats and hostility of attitude, did repel the agents of *Longworth* from their attempts to remove the fence.

*Bell* and *Kiger* claimed the right to enter upon the land by virtue of deeds from some of the heirs of *Paxon*, executed to them in 1851. Such are the principal facts of the case, and upon them two material questions arise:

1. Were *Longworth* and *Miles* in possession, under a claim of title, of the land entered upon by *Bell* and *Kiger?*

2. If so, were the entry and detainer, or either of them, of the latter forcible?

*Longworth* and *Miles* were undoubtedly in possession of some portion of the quarter-section upon which *Bell* and *Kiger* made entry; were they of all?

In the second volume of *Smith's* Leading Cases, p. 477, two propositions are laid down as being generally accepted by the Courts, and they are borne out by the authorities, viz.:

1. "Where one enters, not under any deed or written title, but merely assuming the possession with claim of right, the ouster he effects extends no further than he occupies, cultivates, encloses, or otherwise.excludes the owner from."

2. "But if one enters under color of title by deed or other written document, and occupies and improves the land, he acquires, in law, actual possession to the extent of the boundaries contained in the writing, and this, though the title conveyed to him by the deed is good for nothing."

And in *Ellicott* v. *Pearl*, 10 Peters R. 412, per Mr. Justice *Story*: "Nothing can be more clear, than that a fence is not indispensable to constitute possession of a tract of land. The erection of a fence is nothing more than an act presumptive of an intention to assert an ownership and possession over the property. But there are many other acts which are equally evincive of such an intention of asserting such ownership and possession; such as entering upon the land and making improvements thereon,

raising a crop of corn, felling and selling the trees thereon, &c., under color of title."

It will be appropriate here, then, to institute the inquiry, whether *Longworth* went into possession under color of title; for if he did, his possession would extend to the whole quarter-section, under the assignment from *Paxon* and *Pearson;* and should we so conclude, it will be unnecessary for us to decide the other point, as to whether such acts were performed—such a possession taken as would embrace the whole tract, regarding *Longworth* as a mere intruder, though, we will remark, that such is the inclination of our opinion.

What, then, in a question of adverse possession, constitutes color of title?

It was held in some of the earlier cases in *New-York*, and has been in cases following those elsewhere, that color of title was that which appeared *prima facie* a good, while it was in fact a defective title. But this doctrine is without reason, and is being abandoned.

When a party is in possession of land, claiming an adverse title, the question must always arise, to what extent does his claim reach, what lands does his claim of title cover? And where there is nothing but naked possession to evidence it, his title must, from necessity, be limited to the lands over which he has exercised a visible authority, known to others, as owner; to those, in short, from which he has excluded the former owner and others. A man can not go, solitary and alone, to the prairies or forests of the west, set himself down in the middle thereof, and claim that he possesses all, to an undefined extent, not then actually possessed by some one else. He must be limited to that portion over which he exercises palpable and continuous acts of ownership, as being the quantity which he claims as his own, there being no other evidence, in such case, to enable us to determine the quantity. But where a party is in possession under and pursuant to a state of facts which, of themselves, show the character and extent of his entry and claim, the case is entirely different; and such facts, whatever they may be in a given case, perform

sufficiently the office of color of title. They evidence the character of the entry and extent of the claim, and no colorable title does more; for such title alone does not give right; and possession under such facts as above indicated would be constructive notice, on general principles of law, to all the world, of the character of the claim of title. Hence, it has been decided that possession, under a "sale or gift of land by parol," is under color of title. *Sumner* v. *Stevens*, 6 Met. 337.—*Angell* on Limitations, 3 Ed., p. 503, and cases cited. To the same effect, *Fain* v. *Garthwright*, 5 Georgia R., cited in note on page 504, *Angell, supra*. So, under an assigned land-office certificate, transferred in this state in 1817; *Holcroft et al.* v. *Hunter*, 3 Blackf. 147; a case somewhat similar to the present.

Under these decisions, it is perfectly clear that *Longworth* went into possession under color of title, and that his possession extended to the whole quarter. The assignment, in this case, from *Paxon* and *Pearson*, whether valid or not, was doubtless believed to be so. It was under it that *Longworth* entered. It shows his entry to have been in good faith, on claim of right, and defines the exact extent, the exact boundaries claimed to; and his possession, under the claim, having been continuous for more than twenty years, has perfected his title to the whole quarter.

No question arises in this case as to mixed possession, that is, where different persons are in possession of different parts of the same tract, under different claims of title; and the modifications of the general doctrine of adverse possession such a state of facts occasions, need not be here noticed. See, however, on this point, the elaborate cases of *Hoye* v. *Swan's Lessee*, 5 Maryland R. 237, and *Armstrong* v. *Ristean's Lessee, id.* 256.

Upon the second question, we think the jury was authorized to infer from the evidence a forcible entry and detainer on the part of *Bell* and *Kiger*. See *Evill* v. *Conwell*, 2 Blackf. 133.

*Per Curiam.*—The judgment is affirmed with costs.

*J. G. Jones* and *J. E. Blythe*, for the appellants.

*C. Baker*, for the appellees.