Crispen v. Hannavan et al.

---

E. P. CRISPEN, Respondent, *v.* B. HANNAVAN *et al.*, Appellants.

1. *Limitations — Adverse possession — Possession of part, with claim to the whole.* — Ordinarily, the possession of one who does not hold the true title can extend only to the land in actual occupancy. The owner, who holds constructive possession of all lands not actually occupied by others, cannot be disseized by a mere claim; there must be something more. In addition to the actual occupancy of a part, the open, notorious and continuous possession as owner, there must be a claim to the whole by the same right under which the part actually occupied is held, and such claim must be *bona fide* and evidenced by some paper or proceedings or relation that makes the claimant the apparent owner of the whole.

2. *Limitations — Adverse possession under claim of title — Paper giving color of title, owner must have actual or constructive notice of.* — Where a paper is relied upon as giving color of title, not only must the entry and occupation be open and notorious, etc., but the true owner must have actual or constructive notice of the paper under which claimant enters, and thus be advised not only of the actual possession, which is so open as to be known of all men, but also of its constructive extent and boundary, which can only be known by the paper.

3. *Limitations — Claim of whole, with possession of part, under color of title — Mixed possession.* — In cases of mixed possession, where both claimants actually occupy parts, under adverse claims to the whole, the true title will prevail against the one merely colorable, and the adverse claimant will be confined to the portion actually occupied.

Crispen v. Hannavan et al.

4. *Administrator's sale of real estate, illegal, will yet give color of title.*— Where an administrator made a sale of real estate which was illegal, yet if all the parties thereto supposed that the sale and deed conveyed the title, such sale and deed gave color of title.

5. *Limitations — Color of title —* Bona fides. — The element of good faith is essential to all papers, proceedings or relations under which color of title is claimed. While the law will refuse to protect mere tricksters or gamblers in lands, who institute sham proceedings or cause to be executed sham conveyances, in order to extend their possession by pretended color of title, it will, on the other hand, protect those who honestly purchase and enter into actual possession of the improvements like other *bona fide* purchasers, in the constructive possession of the premises so purchased, according to the boundaries contained in the instrument under which they enter — having by a proper registration given the world and the true owner notice of their claim.

6. *Limitations — Land and land titles — Privity — Adverse possession.* — Those who hold possession of lands independently of previous holders, their several possessions having no connection, cannot so tack their possession as to avail themselves of that which has gone before. There must be privity of grant or descent, or some judicial or other proceedings which shall connect the possessions so that the latter shall apparently hold by right of the former. But not even a writing is necessary if it appear that the holding is continuous and under the first entry; and this doctrine applies not only to actual but constructive possession under color of title. Such possession tacks to that of previous holders, if there has been a colorable transfer.

7. *Limitations — Adverse possession must be continuous — How broken.* — Living off from the premises, or a failure to cultivate them for a few years for any or every reason, will not necessarily constitute a break in the adverse possession; but an actual abandonment of the premises will so break the possession of him who has occupied, that the constructive possession of the true owner will again attach and save his right of entry.

8. *Limitations — What statute governs — How determined.* — The limitation act is not in terms based upon the title of the occupant, but the laches of the true owner. The legal effect is to give the title to the disseizor, and in availing himself of his right he may trace it to and base it upon any statutory period in which such owner was dispossessed; and if it appear that he, or those of whose possession he is availing himself, have held for a longer period than necessary, it will not disprove his claim.

## Appeal from Ray Court of Common Pleas.

*Ray & Ray*, with *Shields*, for appellants.

I. The testimony is sufficiently consistent and clear to show that there were two or three breaks between the time when possession was first taken by Judge Arnold, in 1836 and 1861, when possession was last had by any one under whom plaintiff claims. The first noticeable break in the possession was a period between

the occupation of Hugh Standly and that of his family, and the time when Norvill took possession. The second and most distinct and protracted break in said possession was for some two or three years prior to the time when Shannon took possession; and the third break in the possession was from about 1861 or '62 up to 1865 or '66, when defendant took possession. It will also be observed that from the 30th of March, 1840, when Hugh Standly conveyed to George Ashby, there was a separation or severance of the actual possession from the " colorable title," up to the time of the death of said Hugh Standly in 1841, and on to the time when his widow and family left it, prior to Norvill's possession; for it will not be pretended that George Ashby, to whom Hugh Standly sold it, ever took possession under said conveyance, either by himself or any tenant of his. But the truth is that said Standly, notwithstanding his sale, and thus parting with his colorable title, continued to hold the possession up to his death, and his family after him, without any color of title whatever. His possession, after his conveyance to Ashby, was a naked possession, without any color of title to support or justify the same; or, in other words, during the time it lasted there was a naked possession, without a claim, much less color of title, and, in fact, after an express disclaimer of title. To make title by statute of limitation, there must not only be possession, but that possession must be under a claim of title accompanying said possession.

II. As Hugh Standly was dead at the date of said deed from Ashby, it cannot be pretended that the title vested in him so as to authorize his administrator to sell it as his property. Standly being dead at the date of this deed, the only grantees in whom it could vest were his heirs. As to the real estate, the title of that vests immediately in the heirs of the intestate, and, so far as it is concerned, the heirs are only the legal representatives of the deceased. The administrator cannot claim the title by virtue of this deed, and even if he could, his sale of the property, as such administrator, as the property of the deceased, would fail to pass the title, if in him, by operation of the deed in question. The administrator does not attempt to sell and pass the title as a title resting in him, but as a title resting in the deceased, and which he under-

takes to sell by virtue of an order of the Probate Court. The subsequent sale by Wm. Ashby as Standly's administrator to George Norvill, if it had been formal, legal and valid in other respects, is inoperative in this case, and fails to pass any title, or any color of title, for the reason that, under the circumstances, there was no decent pretense that there was any title, either colorable or otherwise, in Hugh Standly, at the time of his death, which an administrator could transfer by his deed as such.

III. The decree of the Carroll Circuit Court in the case of Shannon v. Hunton's Adm'r and Heirs of Plemmons, was null and void, or at least inoperative to pass or transfer any title or color of title. (See 18 Mo. 561; 22 Mo. 310; 18 Mo. 522; 27 Mo. 364; Ang. Lim. 410; 25 Mo. 201; 23 Mo. 331; 8 Cranch, 462; Tyler Eject. 871, 900, 913; 1 Cow. 275; 30 Mo. 166.)

IV. The deed from Shannon's administrator to Love and Sears, dated December 7, 1860, was manifestly inoperative to pass or transfer either title or color of title, for the want of jurisdiction in the County Court which ordered the sale, when, as will be admitted, the Probate Court of said county — a separate and independent tribunal — had, by law, exclusive jurisdiction of the subject-matter of said order of sale. That order being without jurisdiction, is utterly void, and confers neither title nor color of title.

V. If there was evidence to show a continuity of the actual possession of this land, the plaintiff has not shown a corresponding continuity of the colorable title by which he attempts to justify and protect said possession.

VI. When such a party undertakes to transfer that portion of his tract which remains uninclosed, and of which he claims to have the constructive possession by virtue of his colorable title, he can only do so by a formal deed of conveyance competent to convey a valid title, if he had it. In this case the deed from Norvill to Hunter, which has no seal, would not avail to pass the colorable title outside of the ten or twenty acre field or inclosure of which only the grantor had the actual possession.

VII. As to what constitutes such adverse possession under the

statute as will confer title, and as to what may be accepted as giving or transferring color of title, see following authorities: 23 Mo. 117; 27 Mo. 412; Tyler Eject. 870, 874, 913; 11 How. 424; 8 Cow. 589, 605; 35 Ill. 392; 18 Iowa, 261; A. K. Marsh. 285; 17 How. 601; Ang. Lim. 409, 417; 3 Washb. Real Prop. 122, 138; 35 Mo. 77.

*L. H. Waters*, for respondent.

I. Color of title is that which in appearance is title, but which in reality is no title, but no exclusive or peculiar character or importance attaches to the ground of the invalidity of the apparent or colorable title. (Wright v. Matteson, 18 How. 50.) It is alike immaterial whether the ground of the invalidity is the want of title in him who made the colorable title, or want of form in the writing relied on to give the color. The paper claimed as color of title need not be formal or sufficient to convey title, if title in fact had existed. It is well settled that it need not be *prima facie* on its face. (Pillow v. Roberts, 13 How. 472; Dickenson v. Breeden, 30 Ill. 279; McCoy v. Dickenson College, 5 Serg. & R. 254; Jackson v. Newton, 18 Johns. 360; Walls v. Smith, 19 Ga. 8; Dobson v. Murphy, 1 Dev. & Bat. 586; Whiteside v. Singleton, 1 Meigs, Tenn., 207; Edgerton v. Bird, 6 Wis. 527.)

II. The possession must be connected and continuous beyond a doubt, but "to determine precisely what constitutes continuity of possession, when taken successively by different persons, is a different question, and must depend to a great extent on the circumstances of each case." (Ang. Lim. 417, § 413; Tyler Eject. 908.) In Andrews v. Mulford, 1 Haywood, N. C., 320, it is said the possession must be continuous, "without entry, claim or action on the other side." In Smith v. Chapin, 31 Conn. 530, the court says: "Doubtless the possession must be connected and continuous, so that the possession of the true owner shall not constructively intervene between them." If the possession of the true owner has not intervened, the continuity is unbroken; while it is well understood that the several possessions must be so connected or knit together that no opportunity is afforded for the

seizin of the true owner to intervene and thereby break the continuity of the possession.

III. The disseizor's possession under color of title is adverse to the extent of the boundaries in his deed. If he transfers his possession and claim by a conveyance, insufficient to pass title but sufficient to give color, and accompany such transfer by a transfer of possession in fact, the grantee clearly is entitled to the protection of the statute of limitation from the commencement of his possession. If he cannot tack his possession to the possession of the disseizor, it is because there was an imaginary point of time after the possession of one ended and before the other began, when the possession of the true owner constructively intervened between them and disrupted the continuity. The possession of the second occupant, under a conveyance sufficient to give color of title and establish a privity between the occupants, however inadequate to carry the title, will draw to it the protection of the statute of limitation, and enable him to tack his possession to the possession of his predecessors. Indeed, the chief office of color of title is to characterize the possession and to define the extent of the claim. "There must be such privity that the possessions may each be referred to one entry, as in the case of landlord and tenant, or in the case of the heirs of a disseizor, as father and son." (Ang. Lim. 418; Tyler Eject. 912.) And it is sufficient if privity of contract, blood or estate exist between the consecutive possessions, and also "if an entry is by the consent of the previous occupant, indicated by a contract or an act of the law, passing the possession from one to another" (30 Mo. 99); for if there exists such privity between the several occupants, then the possession of the true owner cannot constructively intervene. (Collins v. Smith, 18 Ill. 160; Smith v. Chapin, 31 Conn. 530; Jackson v. Thomas, 16 Johns. 293; Menkins v. Blumenthal, 27 Mo. 203; Overfield v. Cristie, 7 Serg. & R. 177; McCoy v. Dickenson College, 5 Serg. & R. 254; Cunningham v. Patton, 6 Barr, 355.)

IV. Standly's possession under the deed from Arnold was coextensive with the premises described by his deed. (Wagn. Stat. 917, § 5; Schultz v. Lindell, 30 Mo. 310.) Standly's

possession, after the conveyance to Ashby, was in accordance with his deed, and as tenant to his grantee. (Jackson v. Burton, 1 Wend. 341.)

V. The deed from Standly's administrator to Norvill is color of title. It is a writing connected with the title, and defines the limits of the claim. (Walls v. Smith, 19 Ga. 8.) It is title in appearance. (Tyler on Eject. 872.) It has a grantor and a grantee, and purports to convey the title. (Brooks v. Bruyn, 35 Ill. 392.) It purports to have been made in pursuance of an order of the proper court, and gives color. (Livingston v. Pendergast, 34 N. H. 544.) It is color of title, even if void as to the heirs of Standly. (Vancleave v. Milliken, 13 Ind. 105.) It need not be *prima facie* on its face. (La Frombois v. Jackson, 8 Cow. 590; Wright v. Matteson, 18 How. 50.)

VI. Norvill's deed to Hunton, although not under seal, is color of title. (Blackw. Tax Titles, 664.) A party claiming color of title may avail himself, in deriving his title, of a deed wanting a seal. (Dickenson v. Breeden, 30 Ill. 279; Watts v. Parker, 27 Ill. 224.) A sheriff's return upon a *fi. fa.* is sufficient to give color. (Dobson v. Murphy, 1 Dev. & Bat. 586; Walls v. Smith, 19 Ga. 8.) Color of title may be made through conveyances, bonds, or contracts. (Woodward v. Blanchard, 16 Ill. 424.) It may be derived of a deed void and worthless. (Pillow v. Roberts, 13 How. 472.)

VII. The decree rendered in Shannon v. Hunton's Adm'r and the Heirs of Plemmons, by the Carroll Circuit Court, and the deed from Shannon's administrator to Love and Sears, tested by the authorities already cited, respectively amount to color of title. (Whiteside v. Singleton, 1 Meigs, Tenn., 207.)

VIII. The various deeds in the chain of title from Love and Sears to respondent were properly executed and sufficient to convey to him the title acquired by Love and Sears through the possessions of themselves and their predecessors, by virtue of the statute of limitations; and the objection that possession did not accompany these conveyances, if true in fact, is not well taken.

IX. The respondent is entitled to invoke the aid of the ten years' limitation of 1847, or of the limitation of twenty years, in

force when Standly took possession. (Callaway County v. Nolley, 31 Mo. 393.) If the land in controversy has been held under color of title for the time prescribed by either statute, the recovery in the court below was right, even if appellants have the true title. (Jackson v. Oltz, 8 Wend. 440.)

X. The possessions of the various occupants from Standly to Hamilton, who was the tenant of Love and Sears, were connected and continuous. There was such a privity between them that their several possessions could each be referred to one and the same entry. (Ang. Lim. 518, § 414.) The term "privity" denotes mutual or successive relationships to the same rights of property. (1 Greenl. Ev. 250, § 189.) If there is privity of estate between the occupants by descent or purchase, their possessions may be tacked. (3 Washb. Real Prop., 3d ed., p. 130, § 28.; Ang. Lim. 417, § 413.) It is sufficient if privity of contract, blood or estate exists between the consecutive possessions. (Tyler on Eject. 912.) Deeds and instruments of writing are not the only evidence by which continuity of possession may be shown. (Menkens v. Blumenthal, 27 Mo. 203.) Each entry must be with the consent of the preceding occupant, indicated by contract, or an act of law passing the possession from one to another. (Chouquette v. Barada, 23 Mo. 336 ; Shaw v. Nicholay, 30 Mo. 99.) The possessions may be "knit together" without regular conveyances. (Bowles v. South, 4 Bibb, 551.) Defects in the course, current or transmission of color of title need not be inquired into when the statute of limitations is relied on. (Woodward v. Blanchard, 16 Ill. 424.) A purchaser by parol contract, of one in the adverse possession, may tack his possession to that of his vendor. (Cunningham v. Patton, 6 Barr, 355.) The connection and continuity of the several possessions may be effected by any conveyance, agreement or understanding that has for its object the transfer of the possession and is accompanied by a transfer in fact. (Smith v. Chapin, 31 Conn. 530 ; Fanning v. Wilcox, 3 Day, Conn., 558.) The possession of an administrator may be tacked to that of his intestate. (Tyler on Eject. 917, citing Moffit v. McDonald, 11 Humph. 457.) It was held that a defendant could connect his possession with that of his

wife's father, so as to give him the benefit of the father's adverse possession, and that in a case where the bar did not inure to the benefit of the wife. (City of St. Louis v. Gorman, 29 Mo. 593.) The accidental destruction of the fences did not interrupt the continuity of the possessions. An interruption, to be effectual, must be of the right and not simply of the use. (2 Greenl. Ev. 538, § 545.)

BLISS, Judge, delivered the opinion of the court.

The plaintiff claims possession of the land in controversy by virtue of title acquired under the statute of limitations, and while it is conceded that only a portion of the 160 acres claimed was inclosed and under actual cultivation, yet as the several deeds under which the plaintiff and his grantors entered embrace the whole quarter-section, he claims that his and their possession covered by construction all the land so embraced in said deeds, although they may have failed to convey the legal title.

. Ordinarily, the possession of one who does not hold the true title can extend only to the land in actual occupancy. The owner, who holds constructive possession of all lands not actually occupied by others, cannot be disseized by a mere claim. There must be something more. In addition to the actual occupancy of a part — the open, notorious and continuous possession as owner — there must be a claim to the whole, by the same right under which the part actually occupied is held, and such claim must be *bona fide* and evidenced by some paper or proceeding, or relation, that makes the claimant the apparent owner of the whole. (Fugate v. Pierce, 49 Mo. 441.) Thus is fixed the extent and boundary of his possession, and he is said to hold under color, or semblance or appearance of title. The paper relied upon as giving color of title is ordinarily a defective conveyance, either because the grantor had not the true title, or from some defect in the instrument, and the person who enters under it is presumed to enter adversely according to his apparent title. But not only must the entry and occupation be open, notorious, etc., but the true owner must have actual or constructive notice of the paper under which he enters, and thus be advised not only of the actual possession, which is so

Crispen v. Hannavan et al.

open as to be known of all men, but also of its constructive extent and boundary, which can be known only by the paper.

Judge Scott, in Griffiths v. Schwenderman, 27 Mo. 412, denies that there can be any constructive possession as against the true owner, and avers that such possession operates only against those who have no title. This view, held also in McDonald v. Schneider, *id.* 405; is a mistaken one as given, and can apply only to cases of mixed possession, where both actually occupy a part, claiming the whole, by adverse titles. In that case the true title will prevail against the one merely colorable, and the adverse claimant will be confined to the portion actually occupied; and so with interfering or lapping surveys. (Cheney v. Ringold, 2 Harr. & J. 87; Burns v. Swift, 2 Serg. & R. 436; Ang. Lim., 5th ed., p. 413.)

In the case at bar the defendant denies that the plaintiff and his grantors have held under color, and hence claim that if he can hold at all, he cannot recover the full quarter-section.

It appears that in 1836 Thomas Arnold owned and occupied land adjoining the tract in dispute, and purchased the latter of one John Curll, who conveyed the same by regular deed, which was duly recorded. He entered upon the land and made a small improvement, and in 1838 conveyed his whole farm, including this land, to Hugh Standly. In 1840 the latter conveyed to George Ashby, and in 1841 the said Ashby conveyed back to "Hugh Standly, deceased, his heirs or legal representatives," Standly having in the meantime died. Ashby was a brother-in-law of deceased, and never had possession; but Standly had, before his death, extended the improvement upon the disputed land, and his family continued to occupy the farm until its sale by the administrator. In 1844 the administrator of Standly, under an order of court, sold and conveyed the farm to George Norvill; and this deed of conveyance, when offered in evidence as giving color of title, was objected to because the title was in Standly's heirs, and the administrator had no authority to sell. The objection was, however, overruled, the deed was admitted, and in the subsequent instructions to the jury was held to be sufficient to give color of

35—VOL. L.

title to Norvill, and connect him and his possession with Standly and his grantors.

In making this objection counsel seem to confound color of title with title itself. The latter could not pass by the proceeding in question, but it purported to convey the interest of Standly's estate. The strict legal title, or the interest Standly had acquired by the conveyances before spoken of, may have still remained in the heirs, and yet there was an appearance or color of transfer. All the parties supposed that the administrator's sale and deed had that effect, and if the transfer was not colorable it would be difficult to hold anything such that did not convey a legal interest. Washburn (p. 139, vol. 3, 3d ed.) quotes approvingly a definition given in Brooks v. Bruyn, 35 Ill. 394, in which the court said that "any instrument having a grantor and a grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title to the lands described," and it is held that, to give color, a written instrument or judgment is not necessary.

One who entered upon a specific tract of land which had been surveyed and marked out by public authority, so that its boundaries were well known by the name of the tract and number of the survey, and who improved a considerable portion of the same, claiming the whole as his own and exercising acts of ownership over the whole, and who thus occupied for over twenty years, was held to have disseized the true owner, to have been in under color of title to the whole survey, and to be entitled to protection as owner of the land not under actual cultivation as well as the other. (McCall v. Neely, 3 Watts, 69.) Judge Gibson, in noting the fact that the defendant had no deed or paper title, says: "The words 'color of title' do not necessarily import the accompaniment of the usual documentary evidences; for, though one entering by a title depending on a void deed would certainly be in by color of title, it would be strange if another, entering under an erroneous belief that he is the legitimate heir of the person last seized, should be deemed otherwise; and it would be stranger still if his alienee were deemed to have more color of title than he had himself. To give color of title, therefore, would seem not to

require the aid of a written conveyance or a recovery by process and judgment, for the latter would require it to be the better title. I would say that an entry is by color of title when it is made under a *bona fide* and not pretended claim to a title existing in another." This eminent judge acknowledges the difficulty of giving a proper definition to the term "color of title," and the one attempted by him must be construed by the facts then under consideration. It is not likely that he would have held that a claimant merely to a legal subdivision of land under our ordinary Congressional surveys, who should occupy only a part, would have color of title to the whole, although his claim may be *bona fide.* The different mode of issuing the patents, with their special surveys, the possession and claim of the occupant, so referring to the patent and special survey as to indicate the boundary of his claim, the fact that with the knowledge of its holder he had for more than the statutory period exercised acts of ownership over the whole by continuously paying taxes and otherwise, would distinguish it from the case at bar, had there been no instrument or proceeding to indicate the extent of the occupant's claim. (See Judge Scott's comment on this case in St. Louis v. Gorman, 29 Mo. 593.)

The Supreme Court of Indiana, in Bell v. Longworth, 6 Ind. 273, denies the necessity of a conveyance to give color, and, after giving the general doctrine limiting the possession of an intruder, says: "But where a party is in possession under and pursuant to a state of facts which of themselves show the character and extent of his entry and claim, the case is entirely different; and such facts, whatever they may be in a given case, perform sufficiently the office of color of title. They evidence the character of the entry and extent of the claim, and no colorable title does more."

In Vancleave v. Milliken, 13 Ind. 105, the above doctrine was affirmed, and a judicial proceeding and sale was held to give color, although void as against the owners of the property.

I have noted a few of the cases upon the subject, which abound in the books, to show how remote from the true title may be that which is merely colorable, or that which has the semblance of one. The transfer from Standly to Norvill is an apparent one, although

the right of the heirs might intervene if we were tracing the true title. We are referred to decisions inconsistent with this view, but we deem it more in harmony with the modern doctrine and with the true policy of the State.

Norvill took the possession theretofore held by Standly and his family, and the same year sold and conveyed the premises by deed, without seal, to Charles W. Hunton. Under our view of what may give color, the admission of this defective instrument in evidence was not erroneous.

In 1858 the Circuit Court of Carroll county rendered a decree against Hunton's administrator and others, at the suit of one Shannon, who claimed to have purchased said property at administrator's sale, which decree affirmed the title in said Shannon. This decree, duly recorded, was offered in evidence and received against defendant's objection; also a deed from the administrator of Shannon to Love and Sears, given under an order of sale by the County Court of Carroll county, together with a deed from Shannon's widow. From Love and Sears the title came to the plaintiff in 1863, through several conveyances not in themselves objected to.

All these sales and purchases must be considered colorable. There were grantors and grantees in the instruments, plaintiffs and defendants in the judicial proceedings, whose rights were directly passed upon; and, what is most important, all the transactions seem to have been *bona fide*. They were such as persons unfamiliar with the laws of conveyancing and the practice and jurisdiction of courts might honestly confide in, supposing they were acquiring the true title. The idea of good faith was constantly kept prominent in the instructions below, and the jury must have found all the transactions to have been real and honestly entered into. Too much stress cannot be given to this idea. While the law will refuse to protect mere tricksters, mere gamblers in lands — those who cause to be instituted sham proceedings, or to be executed sham conveyances in order to extend their possession by pretended color — it will, on the other hand, protect those who honestly purchase and enter into actual possession of the improvements, like other *bona fide* purchasers, in the constructive possession of

the premises so purchased, according to the boundaries contained in the instrument under which they enter — having by a proper registration given the world and the true owner notice of the extent of their claim.

2. Such being the character of these transactions, they were also sufficient to establish *privity*. Those who hold possession of lands independently of previous holders, their several possessions having no connection, cannot so tack their possessions as to avail themselves of that which has gone before. There must be a privity of grant or descent, or some judicial or other proceeding that shall connect the possessions, so that the latter shall apparently hold by right of the former. (See Ang. Lim., 5th ed., pp. 413–14, 417–20, and notes; 3 Washb., 3d ed., pp. 130, 132.) Not even a writing is necessary if it appear that the holding is continuous and under the first entry. Judge Napton, in Menkins v. Blumenthal, 27 Mo. 203, says: "Whether one occupant receives his possession from a prior one, or is a mere intruder upon an abandoned lot, is a question of fact which may be determined by any testimony which is legitimate and pertinent. We know of no rule of evidence which confines the proof to a deed or written instruments."

The doctrine of privity in possession, under the statute of limitations, is ordinarily applied to those who hold and have held actual possession, but it applies as well to constructive possession under color of title. Such possession tacks to that of previous holders, if there has been a colorable transfer, and the instructions below were in accordance with this view.

3. The possession must have been continuous, and so the court below held; though in language too general, had the defendant sought a more specific direction as applied to the facts. Instead of seeking to make it more specific, he asked the court to instruct "that any substantial break for a year or other period, more or less, in the successive possession, will break the chain of possession, and any break in the chain of title will break the chain of constructive possession." This language embraces two propositions, the latter one being erroneous, inasmuch as we have seen that a constructive possession may be sustained by a colorable

chain of title, and the first is more abstract than the instruction to the same effect as actually given by the court.

What constitutes a "break in the successive possession?" The jury would be left in the dark upon this important point. It might have been inferred that living off from the premises, a failure to cultivate them for a year or more, for whatever reason, would constitute such break. Nothing would be more erroneous. While an abandonment of the premises will so break the possession of him who has occupied, that the constructive possession of the true owner will again attach, and thus save his right of entry, every failure to cultivate the field for a season, or a delay in repairing the fences when destroyed, will not be held to be an abandonment if a sufficient reason appears.

It is not necessary to consider whether plaintiff's title accrued under the act of 1847 or the previous act. Counsel claim that when the twenty years had expired from the first possession by Arnold, a complete title was gained, and that the subsequent conveyances must be regular, or there is an outstanding title. This fact would be available, were those who acquired such complete title seeking to enforce their rights. But the limitation act is not in terms based upon the title of the occupant, but upon the laches of the true owner; and if he has been disseized, and has acquiesced in the disseizin for more than ten years, he cannot bring his action. The legal effect is to give title to the disseizor, and in availing himself of his right the latter may trace it to and base it upon any statutory period in which such owner was dispossessed. In defending he may answer, if he plead the statute at all, that the plaintiff had not been in possession for more that ten years, and prove the dispossession for any longer period; and in prosecuting he may set up his possessory title at the time of the dispossession complained of; and if it appear that he, or those of whose possession he is availing himself, have held for a longer period than necessary, it will not disprove his claim.

Judge Wagner concurring, the judgment will be affirmed. Judge Adams was not present at the hearing.