HITT ET AL. v. CARR.

[No. 8,529. Filed June 22, 1915. Rehearing denied October 15, 1915. Transfer denied January 7, 1916. Motion to set aside denial of transfer stricken from files May 22, 1916.]

1. JUDGMENT.—*Parol Evidence.*—*Unambiguous Transcript of Record.*—Where a defendant in a quiet title suit alleged by way of former adjudication that plaintiff, "Drusilla C.", had been made a party defendant by the name of "Rosela C." in a former suit to quiet title to the same land; that summons was issued on the complaint therein and served on "Drusilla C.", the theory being that "Drusilla C." had been sued in her wrong name and served in her true name, a transcript of the record in such former suit, not showing the summons, but reciting that "Rosela C." was duly summoned and defaulted and that judgment was rendered

against her, was inadmissible in evidence in the absence of proof showing that the summons was actually served on plaintiff and, since the transcript was unambiguous independent of the summons and the return thereon, parol evidence was incompetent for the purpose of making such proof of service on plaintiff, even on a showing that such summons had been lost. pp. 90, 92.

2. EVIDENCE.—*Parol Evidence.—Unambiguous Transcript of Record.*—An unambiguous transcript of the record in a former suit cannot be affected or modified by parol evidence. p. 91.

3. NAMES.—*Idem Sonans.—Issues.—Evidence.*—Under an answer of former adjudication alleging that plaintiff, "Drusilla C.", was made a party defendant in the former action by the name of "Rosela C." but not presenting the issue of *idem sonans*, a transcript of the record in such former suit was not admissible on the theory that the names were *idem sonans.* p. 92.

4. NAMES.—*Idem Sonans.*—The names "Rosela Carr" and "Drusilla Carr" are not in fact *idem sonans.* p. 92.

5. JUDGMENT. — *Conclusiveness. — Parties Bound. — Evidence.* — A judgment is binding on the parties or their privies, and the effect of a judgment must be mutual and reciprocal to conclude the parties, and no one can take advantage of a decree if he would not have been prejudiced by it had it been rendered in favor of the adversary of the prevailing party; hence a transcript of the judgment in a former suit, offered in evidence on behalf of all defendants, including one who was not a party to the former suit, was inadmissible on behalf of such defendant. p. 93.

6. APPEAL.—*Rulings on Evidence.—Objections.*—On the overruling of an objection to evidence by the trial court, only the grounds of objection presented to the trial court will be considered on appeal; but if the objection is sustained, or the evidence excluded, the ruling will be sustained on appeal unless the appellant shows it was wrong on any theory, and the appellee may avail himself of any valid objection to the testimony as offered. p. 93.

7. TRIAL.—*Evidence.—Admissibility.—Evidence Not Competent as to all Parties.*—There is no reversible error in excluding evidence offered jointly in behalf of several parties where it is incompetent as to some of them, nor in admitting it, if competent as to some, but in the latter case its application and effect must be limited by the trial court, and failure to do so on request of one against whom it is not competent would be reversible error. p. 94.

8. TRIAL.—*Evidence.—Admissibility.—Evidence Not Competent as to all Parties.*—Where evidence is competent in behalf of some, and incompetent as to other, joint parties, it should be offered in behalf of those in whose favor it is competent, and when so offered should be received and considered so far as competent. p. 94.

9. JUDGMENT.—*Evidence.—Evidence to Extend.—Admissibility.*—The testimony of an abstracter of titles that his company made an

abstract for a party to the action; that in preparing abstracts it was the custom of the company for some member of the office force to run the chain of title from their abstract books, and then the records would be examined, notations made of material data, including the substance of a complaint, summons and return thereon when in any suit affecting the property; and that he compared the abstract with the notes, numbered the pages and signed the company's name to it; and that he thought the abstract was compared with the original summons in a case affecting the property, though he had no special recollection about the matter or that he had ever seen the original summons, and did not make the notes from which the abstract was prepared, did not know who did, and that the notes had not been preserved, was inadmissible to vary or extend the effect of the judgment in such case beyond the scope indicated by the judgment roll itself.    p. 94.

10. EVIDENCE.—*Private Records.—Abstract of Title.—Admissibility.* —An abstract of title is not admissible in evidence for the purpose of showing copy of portions of summons and return in a former suit affecting the property abstracted on the theory that the item was a regular entry made by third parties in the due course of business, unless it should appear that the making of the abstract, including the reference to the summons and return, was a part of the *res gestae* of some transaction between the parties to the action in which it is offered and that the entries were contemporaneous with such transaction and made in the regular course of business, or that they were such entries made in the due course of business in some transaction between the party against whom they are offered and a third party under circumstances that gave them probative value under the issues.    p. 96.

11. EVIDENCE.—*Private Records.—Abstracts of Title.*—An abstract of title prepared by an abstract company is a private record and its admissibility in evidence is not governed by the rules applicable to the admission of public records and documents.    p. 96.

12. ADVERSE POSSESSION.— *Title.— Evidence.—Sufficiency.*—Evidence showing that in 1876, the purchaser of the land in suit looked at it and, being satisfied that it was worthless, told plaintiff that if she would live on it she might have it; that no notary being convenient he wrote off a description and handed his unrecorded deed to plaintiff with a promise to execute a deed to her later; that no deed was ever made, but plaintiff moved on the land, erected buildings at various places thereon and attempted to cultivate it, although it was worthless for cultivation; that she erected a dancing pavilion on the lake front; that her husband used the shore in his fishing business and erected structures necessary in such business; that plaintiff used the land as much as it was possible to do so and from time to time cut and sold small timber growing thereon; that she always asserted ownership to the exclusion of all other claimants and resided thereon for more than twenty years, except

for occasional periods of temporary absence, etc., was sufficient to show title by adverse possession to at least a portion of the land in controversy.  p. 98.

13. ADVERSE POSSESSION.—*Title.*—*Evidence.*—*Sufficiency.*—Where there was no failure of proof as to any material element to sustain a finding of adverse possession the finding could not be affected on appeal by the fact that some of the evidence as to certain elements was conflicting.  p. 103.

14. ADVERSE POSSESSION.—*Color of Title.*—*Void Deed.*—A deed void on its face, if containing a description sufficient to identify the land, may give color of title as effectually as though it were regular on its face, but void for reasons *dehors* the instrument, since the office of "color of title" is merely to define the extent of the land claimed by one asserting title.  p. 106.

15. ADVERSE POSSESSION.—"*Color of Title.*"—"*Claim of Title.*"— "Color of title" is that which has the semblance or appearance of title, either legal or equitable, but which is in fact no title, while "claim of title" exists where one enters upon and occupies land with the intent to hold it as his own against the world irrespective of any foundation for such claim.  p. 106.

16. ADVERSE POSSESSION.—"*Color of Title.*"—"*Claim of Title.*"— A claim of title, without color of title, may ripen into title to the land actually occupied by the claimant, but with color of title his title may be perfected to the whole tract indicated by that which gives the color of title, though he be in actual possession of only a part of such tract, if the part possessed is an integral portion of the whole tract.  p. 107.

17. ADVERSE POSSESSION.—*Color of Title.*—*Knowledge by Holder of Legal Title.*—It is essential to the perfection of title by adverse possession that the holder of the legal title must have actual or constructive notice of the claim of right or title asserted by the one in possession, but it is not essential that he have knowledge of the existence of "color of title" in the latter in order that the latter may have the benefit thereof if it in fact exists.  p. 107.

18. ADVERSE POSSESSION.—*Color of Title.*—*Instruments Constituting.*—An instrument in writing, or a survey, used by a donor of land or referred to by him in making a parol gift of land, under and in pursuance of which the donee has taken possession, will give color of title, though it does not purport to convey the land to such donee, if it so describes the land as to enable the donee to ascertain therefrom the boundaries and extent thereof.  p. 107.

19. ADVERSE POSSESSION.—*Color of Title.*—*Party Conferring.*— In the absence of a statute requiring it, the grantor or donor of lands, or one from whom it is claimed by descent, may confer color of title without himself having any kind or semblance of title to the property.  p. 108.

20. ADVERSE POSSESSION.—*Color of Title.*—*Instruments Constituting.*—A forged deed, or a lost deed, the contents of which have been proven, may give color of title.  p. 108.

21. EVIDENCE.—*Parol Evidence.—Lost Deeds.—Color of Title.*—The contents of an instrument describing land conveyed or given to a claimant, and which has been lost or is beyond the jurisdiction of the court, may be proved by parol for the purpose of showing color of title. p. 108.

22. ADVERSE POSSESSION.—*Color of Title.—What Constitutes.*—While as a general rule color of title arises only from an instrument in writing describing the land claimed, a state of facts, pursuant to which the claimant is in possession, and which facts of themselves show the character and extent of his entry and claim, may sufficiently perform the office of color of title upon which to base a title by adverse possession, not only to the land actually occupied by the claimant, but to the full extent of the claim as thus shown. p. 108.

23. ADVERSE POSSESSION.—*Extent of Possession.—Findings.—Conclusiveness.*—Where the question of whether plaintiff was in actual possession of all the land claimed was an issuable fact, a finding for plaintiff on that issue, if warranted by the evidence, is conclusive on appeal. p. 114.

24. ADVERSE POSSESSION.—*Evidence.—Acts of Ownership.—Occupancy.—Character of Land.*—The character of real estate claimed by adverse possession is of controlling influence in determining what acts of ownership, use and occupancy will suffice to show possession of the whole tract claimed, and if the possession and other acts of ownership are such as are reasonably adapted to and in keeping with the beneficial use that may be reasonably made of such lands, and are such as are usually practiced by owners of similar lands in that vicinity and at the time in question, and such possession and acts of ownership are exercised in disregard of all conflicting claims without permission from any one, the inference of actual possession of the whole tract is warranted. p. 114.

25. ADVERSE POSSESSION.—*Acts Constituting.*—Adverse possession which affects the right of the true owner is that which exists and appears on the land itself, and where the occupancy is such as to indicate ownership and to furnish to the real owner, upon inquiry, information of the occupant's claim of title, and the character and extent of his possession, it is sufficient. p. 115.

26. ADVERSE POSSESSION.—*Evidence.—Sufficiency.—Color of Title.*—Evidence showing that in 1876 the owner of land bordering on Lake Michigan, believing that the same was of no value, told plaintiff that if she would live on it she could have it, and gave her the deed held by him with the promise to execute and send her a deed later; that plaintiff thereafter returned the deed requesting the owner to execute her a deed, but that no deed was ever made; that plaintiff lived on the property from the date of its presentation to her continuously for more than twenty years, excepting for occasional periods of temporary absence; that she caused buildings to be erected at various places on the land and made attempts to cultivate it, but that it was worthless for cultivation; that she

erected a dancing pavilion on the lake front; that her husband used the shore in his fishing business and erected structures necessary in such business; that plaintiff used the land as much as it was possible to do so and from time to time cut and sold small timber growing thereon; that she always asserted ownership to the entire tract to the exclusion of all other claimants, etc., established title by adverse possession in plaintiff to the land in controversy either on the theory that the deed left in her possession by the alleged donor gave her color of title, or that, independent of the question of color of title she had such actual, visible, hostile and uninterrupted possession under claim of ownership as to perfect her title. p. 117.

27.  WITNESSES.—*Competency.*—*Transactions With Deceased Persons.* —*Statute.*—Plaintiff, suing to quiet title to land alleged to have been given to her, was not incompetent under §522 Burns 1914, §499 R. S. 1881, to testify as to the transaction with the donor and as to the contents of a deed at that time left in her possession, on the ground that one of the defendants claimed an interest by inheritance from her parents who had died long prior to such transaction, since plaintiff's claim was not founded on a contract with or demand against defendant's ancestor "to obtain title to, or possession of, property * * * of, or in right of such ancestor," and the phrase "or to affect the same in any manner," as found in the statute, refers to the property mentioned in the statute and does not bring in a new class of cases not "founded on a contract with or demand against the ancestor." p. 118.

28.  TRIAL.—*Evidence.*—*Admissibility.*—*Evidence Not Competent as to all Parties.*—Where evidence as to transactions between plaintiff and the donor of land to which plaintiff sought to have title quieted was otherwise admissible, plaintiff was not incompetent to testify under §522 Burns 1914, §499 R. S. 1881, by reason of the mere fact that one of the defendants claimed an undivided interest by inheritance, since, if the testimony of plaintiff was incompetent as to such defendant, it would have been the duty of the court to admit it and limit its application by instructions to the jury.   p. 121.

29.  EVIDENCE.—*Declarations.*— *Res Gestae.*— *Admissibility.*— Evidence given by the claimant of land by adverse possession, and by the members of her family and other witnesses, relating to declarations made and acts performed while in possession of the land, relating to the character and extent of claimant's possession and the use and control of the land by her and such members of her family under her directions, was competent to qualify, explain and characterize such possession, since such declarations and acts were part of the *res gestae* of the continuing act of possession. p. 121.

30.  PLEADING.—*Complaint.*—*Amended Complaint.*—*Change of Venue.*—Where, in a suit to quiet title, a verdict was returned

containing a correct description of the land in question, the filing of an amended complaint after change of venue was taken to another county, containing a corrected description identical with that contained in such verdict, was unobjectionable. p. 122.

31. PLEADING.—*Complaint.*—*Amendment.*—The amendment of the description in a complaint to quiet title, so as to correctly describe the land involved, is legitimate and is not ground for reversal, especially in the absence of any showing that defendants were prejudiced, misled or deprived of any defense thereby. p. 122.

32. ADVERSE POSSESSION.—*Evidence.*—*Sufficiency.*—The evidence was not insufficient to support plaintiff's claim of ownership and title by adverse possession, on the theory that the possession was in plaintiff's husband, because of the mere fact that he drove trespassers from the land, where there was evidence tending to prove all the essential elements of adverse possession in plaintiff and to show that the husband drove trespassers off at her direction. p. 123.

33. HUSBAND AND WIFE.—*Acquisition of Title by Wife.*—*Adverse Possession.*—A woman is not precluded from taking and holding the exclusive possession of land by the mere fact that she is married, though her marital relation is proper to be considered along with other evidence bearing on the question of possession in her. p. 124.

34. APPEAL.—*Review.*—*Verdict.*—*Conclusiveness.*—Although the evidence is conflicting, if there is no failure of evidence, a verdict based thereon is conclusive, since the court on appeal cannot weigh or ignore evidence. p. 124.

From Laporte Superior Court; *James F. Gallaher*, Special Judge.

Action by Drusilla Carr against Rosa M. B. Hitt and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Erwin McDowell, John H. Gillette, Osborne & McVey, Meeker & Hershman, Hodges & Ridgley* and *John R. Cockran*, for appellants.

*Henry Warrum, Ballard & Stanton, D. E. Kelley* and *A. C. Carver*, for appellee.

*John L. Davidson* and *Korbly & New*, Amici Curiae.

FELT, J.—This suit was brought by appellee against appellants and others to quiet title to certain real estate. There were two paragraphs

of amended complaint. The first contains the usual formal averments to quiet title and alleges that appellee is the owner in fee simple of real estate in Lake County, Indiana, described as follows: "Lot one (1) in section thirty-one (31) in township thirty-seven (37) north, range seven (7), west, of the second principal meridian, and all that part of said section thirty-one (31) lying north and west of said lot one (1) above described, being all of the land lying south of lake Michigan and north and west of the Grand Calumet river in said section thirty-one (31)". It is also alleged: "That on or about the month of March, 1876, this plaintiff under claim of right and color of title took the exclusive possession, control, and absolute dominion and use of all the said real estate, and has continuously under said claim of right, with full notice to the world, since said time, lived upon, occupied, cultivated, as far as said real estate was possible, or susceptible of cultivation, cultivated, improved, and used all of said real estate for every purpose to which it was adapted, or of which it was capable of use, and during all of said time has asserted, exercised, and claimed the absolute ownership, unrestricted right, use and title of and in all of said real estate; that for more than twenty years continuously last past, she has had, under claim of right, the actual, hostile, open, notorious, exclusive and continuous possession of said real estate, and of every part thereof; that plaintiff's said claim and use and enjoyment of said real estate, as aforesaid, has been adverse, visible, and uninterrupted, during all of said time." The second paragraph alleges that appellee is the owner in fee simple of the real estate described in the first paragraph of amended complaint, and also contains the usual averments to quiet title,

which are omitted here because not controverted.

Appellants; other than Rosa M. B. Hitt, separately demurred to each paragraph of amended complaint, on the ground that the facts alleged are insufficient to state a cause of action. Each demurrer was overruled and an exception taken. Appellant Rosa M. B. Hitt answered by general denial each of the allegations of the amended complaint as to all land lying north of the Indian boundary line, also known as the "ten mile" line. She also filed a second paragraph of answer in which she alleged in substance that the "defendant Mary H. B. Hitt and Winchester W. Hall", in August, 1903, were the owners of all the fractional quarter west of the Calumet River and north of the Indian boundary line, of the north half of section 31, township 37 north, range 7 west, of the second principal meridian, containing 64.51 acres; that on August 28, 1903, said owners filed suit in the circuit court of Lake County, Indiana, against a large number of persons to quiet title to said real estate and appellee was a party to the suit under the name of "Rosela Carr"; that summons was duly issued and served on "Drusilla Carr"; that Drusilla Carr did not appear and was defaulted and judgment was duly entered against her quieting the title to said real estate in said Hitt and Hall, which judgment is in full force and effect; that since the rendition of said judgment she (Rosa M. B. Hitt) has acquired an interest in said real estate from said Mary H. B. Hitt by conveyance. By her third paragraph of answer, appellant Rosa M. B. Hitt disclaimed any interest in the other real estate described in appellee's amended complaint.

Appellant Arza B. Hitt filed answers similar to those of Rosa M. B. Hitt, in which he alleges

that since title to said real estate was quieted in Mary H. B. Hitt and appellant Hall, he has acquired an interest therein by conveyance from Mary H. B. Hitt. Appellant Hall also filed answers similar to those of Rosa M. B. Hitt. Appellant Mathieu filed answer in two paragraphs, the first of which was similar to the answer of Rosa M. B. Hitt. The second paragraph alleges that appellant Mathieu and certain other parties in August, 1903, were the owners of an undivided one-sixth part of the real estate described in appellee's amended complaint, as tenants in common with one Mary H. B. Hitt and appellant Hall. The answer then alleges the facts about the suit of appellant Hall and Mary H. B. Hitt, in 1903, to quiet title to said real estate, and avers that since the rendition of the judgment in that case she has acquired certain interests in said real estate from said persons, other than the plaintiffs in that suit, and now owns the undivided one-sixth part thereof as tenant in common with the other appellants who are alleged to own the undivided five-sixths part of said real estate; that the title acquired by the plaintiffs in said suit to quiet title in 1903 enured to her benefit by reason of the fact that at the time the judgment was rendered she was an owner as tenant in common, with the plaintiffs in the suit, of the real estate to which the title was quieted as aforesaid. Appellee replied to the special answers by general denial.

Appellant Mathieu filed a cross-complaint against appellee to quiet her title to the portion of the real estate she claimed to own. To this cross-complaint, appellee filed a general denial. The cause was tried by a jury and a verdict was returned in favor of appellee on her amended complaint and in her favor on the cross-complaint of appellant

Mathieu. Judgment was rendered on the verdict quieting appellee's title to the real estate described in her amended complaint.

The errors assigned and relied on for reversal are: (1) The overruling of appellants' motion for a new trial; (2) the overruling of the separate motion of each of the appellants for a new trial; (3) that the Laporte Superior Court had no jurisdiction of a part of the real estate involved in the judgment of that court, viz., as to the land lying north of lot No. 2 thereof, according to the government plat. A new trial was asked on the grounds: (1) That the verdict of the jury is not sustained by sufficient evidence; (2) that the verdict is contrary to law. (3) That the court erred in refusing to give to the jury certain instructions tendered by appellants; (4) in giving to the jury certain instructions; (5) in the admission of certain evidence; (6) in permitting appellee to testify in answer to certain questions; (7) in excluding certain evidence offered by appellants; (8) and in refusing to permit appellants to read in evidence a certified copy of the record in the case of *Hitt, et al.* v. *Lightener, et al.,* cause No. 6,444 of the Lake Circuit Court.

We first consider the alleged error in excluding the transcript of the record offered in evidence.

1. The several answers of former adjudication allege that appellee was made a party defendant to the former suit to quiet title by the name of "Rosela Carr"; that summons was issued on such complaint, but was served on "Drusilla Carr". The answers do not proceed on the theory that the names are *idem sonans* or that appellee was commonly known as "Rosela Carr", but upon the theory that "Rosela Carr" was sued and the process against her was served on "Drusilla Carr", the appellee in this suit. In other words, that Drusilla

Carr had been sued in her wrong name and served in her true name. Appellant Mathieu was not a party to the former suit. The record was offered in evidence on behalf of all the defendants and was objected to, on the ground that it does not show that appellee was a party to that suit; that she was served with process; that she was defaulted; that she appeared to the action, or that judgment was taken against her. Appellants urged the admission of the transcript in evidence on the ground that they had shown the loss of the summons, and that the names were "substantially *idem sonans.*" The name of appellee does not appear in the transcript offered in evidence, but the name "Rosela Carr" does appear throughout the record of the proceedings. The transcript offered in evidence shows that "Rosela" Carr was duly summoned; that she was defaulted, and that judgment was rendered against her. Appellants did not claim that they had offered proof to show that the summons in the case issued against "Rosela" Carr had been served on appellee, nor did they state to the trial court that they proposed to make such proof. The transcript of the judgment rendered against "Rosela" Carr would not tend to prove the allegation of the answer that the summons issued against "Rosela" Carr had been served on appellee. The transcript shows that "Rosela Carr" was duly served with process, and that upon her failure to appear and answer the complaint, she was defaulted and judgment was rendered against her. So far as the record of the proceedings is evidenced by the transcript, it is unambiguous and can not be affected or modified by parol evidence.

2. *Mitten* v. *Caswell-Runyan Co.* (1913), 52 Ind. App. 521, 527, 528, 99 N. E. 47, and cases cited. Until evidence was offered tending

to prove that the summons, not shown by the transcript though legally a part of the record, was actually served on appellee, the record of the judgment was not admissible in evidence, and could only be received after such proof had been made, for the purpose of proving what was adjudicated. *Mitten* v. *Caswell-Runyan Co.*, *supra*, 525.

The issue raised by the answer was one of identity of person. As already shown, it is not averred that "Rosela" and "Drusilla" are *idem sonans*, nor that appellee was commonly known as "Rosela," but it is clearly averred that the process was issued against "Rosela" and served on Drusilla Carr, the appellee in this case. To sustain this answer required proof that the summons was actually served on appellee and that the return on the summons showed service on Drusilla Carr, else there would be no basis of ambiguity in the record that would permit parol proof to show anything different from that which appears on the face of the judgment roll independent of the summons and the return thereon. The loss of the summons did not aid the offer of the unambiguous transcript of the judgment roll, though it would be an important consideration when proof was offered of the contents of the summons and the return thereon. The statement that the names were *idem sonans* did not render the transcript admissible, (1) because the special answer does not present such issue, and (2) because the names are not in fact *idem sonans*. *Jenkins* v. *Steele* (1913), 55 Ind. App. 11, 102 N. E. 139, 103 N. E. 365, and cases cited; *State* v. *McCormick* (1895), 141 Ind. 685, 40 N. E. 1089.

As already shown, the offer of the transcript was made jointly by all the appellants, and appellant

Mathieu was not a party to the judgment.    Aside from the reasons already shown, the transcript was not competent evidence in her behalf, notwithstanding the averments of her answer that she was a tenant in common with the plaintiffs in that suit and had acquired additional interests in the real estate from parties other than her coappellants, since the rendition of the judgment, the record of which was offered in evidence.    A judgment is binding on parties or their privies, and the effect of the judgment must be mutual and reciprocal to conclude the parties.    No one can take advantage of a decree if he would not have been prejudiced by it, had it been rendered in favor of the adversary of the prevailing party.    *Maple* v. *Beach* (1873), 43 Ind. 51, 58; *Hoosier Stone Co.* v. *Louisville, etc., R. Co.* (1892), 131 Ind. 575, 582, 31 N. E. 365; *Finley* v. *Cathcart* (1898), 149 Ind. 470, 477, 48 N. E. 586, 49 N. E. 381, 63 Am. St. 292; 1 Freeman, Judgments (4th ed.) §159; 24 Am. and Eng. Ency. Law 730; 23 Cyc 1238-1253.

When an objection to the admission of evidence is overruled, no grounds of objection will be considered on appeal, except those presented to the trial court.    But, where an objection is sustained or the evidence has for any reason been excluded, the ruling will be sustained unless the complaining party shows that the ruling was wrong on any theory.    If an objection is made and sustained, and the party who offered the evidence takes an appeal, the appellee on appeal may avail himself of any valid objection to the testimony as offered, and is not limited by the objection made at the time the evidence was excluded.. *Haas* v. *C. B. Cones, etc., Co.* (1900), 25 Ind. App. 469, 471, 58 N. E. 499; *Whitney* v. *State* (1900), 154

Ind. 573, 577-578, 57 N. E. 398; *Leach* v. *Dickerson* (1896), 14 Ind. App. 375, 376, 42 N. E. 1031.

7. Appellee did not object on the ground that the offer was made on behalf of all the appellants, and that appellant Mathieu was neither a party nor a privy to the judgment, but if the evidence had been otherwise admissible, the trial court did not commit reversible error in excluding it, when offered jointly on behalf of all the appellants in the manner above shown. Where evidence is offered jointly on behalf of several parties, which is competent in behalf of some, and incompetent as to others in whose behalf it is offered, it is not reversible error to exclude it when so offered. *Fowler* v. *Newsom* (1910), 174 Ind. 104, 113, 90 N. E. 9; *Malone* v. *Stickney* (1883), 88 Ind. 594, 597. Where it is competent as to part, it would not, however, be reversible error to admit it, but it would in such case be the duty of the trial court to limit its application and effect according to its competency, and it would be reversible error to fail so to do on request of a party against whom it was not competent. Where

8. evidence is competent in behalf of some, and incompetent as to other, joint parties, it should be offered on behalf of those in whose favor it is competent, and when so offered should be received and considered so far as competent. *Benjamin* v. *McElwaine-Richards Co.* (1894), 10 Ind. App. 76, 82, 37 N. E. 362; *Thistlewaite* v. *Thistlewaite* (1892), 132 Ind. 355, 357, 31 N. E. 946; *Smith* v. *Meiser* (1894), 11 Ind. App. 468, 470, 38 N. E. 1092.

Appellants showed that search for the summons issued in the case of *Hitt* v. *Lightener, et al., supra,* had been made and that it could not be found.

9. They then offered to prove the contents of the return on the summons by Walter L. Allman,

an abstracter of titles, who testified that his company had made an abstract of title for appellant Hall for a part of section 31, north of the Indian boundary line, in July, 1906. He testified that in preparing abstracts it was the custom of his company for some member of the office force to run the chain of title from their abstract books and then the records would be examined, notations be made of all material data, including the substance of a complaint, summons and return thereon when the suit affected the property; that he himself compared the abstract with the notes, numbered the pages and signed the firm name to the Hall abstract; that he thought the abstract was compared with the original summons in said case; that he had no special recollection about the matter and no definite recollection that he ever saw the original summons; that he did not make the notes from which the abstract was prepared, did not know who did make them, and the notes had not been preserved. By this proof appellants seek, in a collateral proceeding, to extend the effect of a judgment beyond the scope indicated by the judgment roll itself. The witness does not show that he knew the contents of the summons and return from any personal knowledge or from having seen the originals, but that his information was obtained from notes, or secondary evidence, procured by some member of the office force. His opinion that the abstract was compared with the originals, based on his whole statement shows that it was his conclusion based on his idea of the abstract company's manner of doing business, and not on any actual knowledge of the facts in this particular instance, nor from any inspection of the originals made by him at any time or place. Information so remote from original sources, so general and indefinite in its character

is not admissible as proof to vary or extend the effect of a judgment regular on its face. 1 Elliott, Evidence §§461, 462; 2 Elliott, Evidence §§1476, 1477, 1478; 1 Wigmore, Evidence §§656-659, 666; 2 Ency. Evidence 264; *Wiggins* v. *Holley* (1858), 11 Ind. 2, 11.

A portion of the abstract of title made for appellant Hall as above shown was offered in evidence for the purpose of showing the abstracter's memoranda or copy of portions of the summons and return in question. The abstract was excluded and appellants contend that it should have been admitted on the theory that it was a regular entry made by third parties in the due course of business. To be admissible under the rule invoked, it should appear that the making of the abstract, including the reference therein to the summons and the return of the sheriff thereon, was a part of the *res gestae* of some transaction between appellee and appellants, and that the entries offered in evidence were contemporaneous with such transactions, and made in the regular course of business, or that they were such entries made in the due course of business in some transaction between appellee and a third party under circumstances that gave the entries probative value under the issues of the case on trial. The offer made was a private entry and the rules applicable to the admission of public records and documents have no application. There is no fact or circumstance shown which so connects appellee with the making of the abstract as to render it competent evidence against her under the issues of the case. *State, ex rel.* v. *Central, etc., Bridge Co.* (1912), 49 Ind. App. 544, 549, 97 N. E. 803, and cases cited; *Johnson* v. *Zimmerman* (1908), 42 Ind. App. 165, 173, 84 N. E.

541; *Fleming* v. *Yost* (1894), 137 Ind. 95, 97, 36
N. E. 705; *Place* v. *Baugher* (1902), 159 Ind. 232,
234, 64 N. E. 852; *Rouyer* v. *Miller* (1896), 16 Ind.
App. 519, 526, 44 N. E. 51, 45 N. E. 441, 443, 61
N. E. 683; *Barnett* v. *Lucas* (1901), 27 Ind. App.
441, 443; 1 Elliott, Evidence §§454-456, 459-462;
1 Greenleaf, Evidence §§115-120; *Culver* v. *Waters*
(1910), 248 Ill. 163, 167, 93 N. E. 747.   We find
no instance where the rule of admitting  the account
or other books of third parties as evidence has been
carried to the extent contended for by appellants
in the case at bar.   The entries of books in a bank
have been received to show the state of the account
of a depositor who was in litigation with a third
party, but in such instance the person against whom
the evidence was received was a party to the trans-
action with the bank and the entries received as
evidence were a part of the *res gestae* of such trans-
actions.   But here the abstract was compiled long
after the issuance and return of the summons, and
appellee was in no way a party to the making of the
abstract which, at most, was only the private
memoranda of the abstract company, purporting
to give a digest or summary of the public records
affecting the real estate for which the abstract was
prepared.   Aside from the character of the instru-
ment offered, it was wanting in the essential element
of being a part of the *res gestae* of any transaction
to which appellee was a party and was therefore
properly refused as evidence.   *Marks* v. *Box* (1913),
54 Ind. App. 487, 500, 103 N. E. 27; *Culver* v. *Marks*
(1890), 122 Ind. 554, 563, 23 N. E. 1086, 7 L. R. A.
489, 17 Am. St. 377; *Cleland* v. *Applegate* (1894),
8 Ind. App. 499, 500, 35 N. E. 1108; *Myer* v. *Brown*
(1902), 130 Mich. 449, 90 N. W. 285; *State, ex rel.* v.
*Central, etc., Bridge Co., supra.*   The cases cited

by appellants where abstracts of title have been received in evidence in states having statutes that make them admissible, under certain specified conditions, have no application to the question presented here.

The evidence relating to color of title and appellee's possession and use of the land, omitting many details, is in substance as follows: Appellee testified that in March, 1876, she and her husband were living near the land in controversy at what was called "the blowout"; that a Mr. Bingham came to their house and said he had a deed for some land and had been informed that her husband was well acquainted with the land and would show him around; that her husband and Mr. Bingham looked at the land and returned to their house in the evening; that Mr. Bingham said he was sick and tired and disgusted with his land and that he had been buncoed; that his best land lay out in the river; that he would not have it and that it was not worth having his deed recorded; that she said to him, "Mr. Bingham, if you don't want the land, give it to me," and he said, "Mrs. Carr, if you will move on this land and live on it, you can have it"; that he looked around again the next day and said he would have to go back home, and that he asked where he could get a notary public, and she told him the nearest one was at Hobart; that he refused to go that far, but he wrote off the description from the deed and said he would take it with him; that he had a friend who was a notary public and would do the work for nothing; that he would make the deed and send it to her; that he gave her his deed and told her to keep it until he sent the deed to her; that he had told Mr. Crockett, who was living on the land, that he had given the land to appellee and that he must sur-

render possession to her and that Crockett had agreed to do so; that he had taken possession of the land described in the deed, and she should take possession of all of it; that she did take possession of all the land in March, 1876, as soon as they could cut the logs and erect a one-room log cabin; that they built the house from timber growing on the land; that she did not receive a deed from Mr. Bingham, but in the fall of that year she received a letter from him, which she had lost and was unable to find; that the letter came from Philadelphia, Pennsylvania, and Mr. Bingham stated in it that he had lost his copy of the description of the land and requested her to send the deed he left with her; that she sent him the deed and never heard from him again, but that she had written to him twice; that through her husband she afterwards consulted a lawyer about the deed, and he told her it would not do her much good as they had lived on the land twenty years and it was hers anyway.

In answer to a question, appellee stated her recollection of the substance of the deed as follows: "I now convey all the land between Lake Michigan and the Grand Calumet River and west of its mouth in section 31 in Lake County, Indiana"; that the deed was to Mr. Bingham but she did not remember his christian name or the name or names of the grantors. There was also evidence tending to prove that in March, 1876, appellee and her husband moved on the west end of the land in controversy, in a cabin located about 200 or 300 feet south of Lake Michigan and about the same distance east of the west line of said section 31; that about that time her husband blazed the trees along said section line which was the west boundary of the land claimed by appellee, which in answer to a question she described as lying "South of Lake

Michigan, north of the Grand Calumet river and west of its mouth, in section 31 in Lake county, Indiana"; that she and her husband lived at that place continually until November, 1877, when they moved into a one-room log house on the eastern part of the land now claimed by appellee, situated north of the Indian boundary line and near the bend of the river, at which place they continued to reside for eight or nine years and then moved into a frame house erected about 400 feet northeast of the log house which frame house was north and west of the Grand Calumet river; that they continued to live at that place until 1896, when they moved to their present location near the gravel road, about 200 feet south of Lake Michigan, 300 feet east of the gravel road and 800 feet from the river; that they moved their two rooms and added one room and a porch; that they also erected and used at the latter two places an ice house, a fish house, a large barn to accommodate horses of persons who came to the lake, erected hitch racks and a bowery with a platform for dancing.

The evidence also tended to show that the principal business of appellee's husband and her sons was fishing, hunting and trapping; that they erected such structures along and near the lake shore of said land as were useful in fishing; that they used boats, a windlass, and piling driven in the lake; that they prepared their nets on the land and cleaned and prepared their fish for market in the fish house; that the family served meals and refreshments to people who visited the lake; that they tried to raise flowers, planted a garden at different times, sowed oats and grass seed and set out fruit trees, but the sand always covered them up and it was impossible to raise anything of that kind; that the land was very rough, and consisted of sand washed

up from the lake, which from the action of the waves. and the wind shifted and drifted so that it was impossible to raise vegetation if the soil. had been otherwise productive, but it was not; that there was some timber growing on the land, especially along the river, consisting of oak, white pine, yellow pine, cedar and poplar; that appellee sold some firewood, fence posts and logs from the land and the family procured firewood from the timber on the land and cut and sold cedar for Christmas trees; that they cut ice from the river and put it up on the land for use in their fishing business and trapped along the river which formed the southern and eastern boundary line of the land claimed by appellee; that they employed men to help in fishing, and after their sons were large enough they helped and after the death of Mr. Carr they carried on the work for appellee.

Appellee also testified in substance that soon after they moved on the land in 1876, she told her husband not to allow people to cut wood on her land and to keep trespassers off of it; that at times he had driven trespassers from the land; that she herself had caused trespassers to leave and to settle for timber they had damaged on her land; that prior to the construction of the gravel road sixteen years before the trial in 1912, there were only two other people on the land and they were there by her consent; that those that had occupied portions of it along the lake since that time had procured her consent either directly or through some other member of her family; that she had spoken about her claim to this land to her husband, Robert Carr, to a Mr. Dutcher, a Mr. Adams and a Mr. Blake, while on the land, and that long prior to the institution of this suit when it was suggested by Mr. Blake or Mr. Dutcher that it was government

land she told them that it was not, and that it belonged to her; that about sixteen or seventeen years before the trial, in the presence of her husband, she told Mr. Dutcher and Mr. Blake that she owned the land between Lake Michigan and the Grand Calumet River west of its mouth in section 31, in Lake County, Indiana; that she had talked with different people about selling or leasing portions of the land in question at different times while occupying it, and claimed to own it; that she raised a family of six children while living on the land, the oldest, Edward Carr, being 36 years of age at the time of the trial, the others being named, respectively, Clara Rosalie, Frederic William, Henry Robert, Nettie Elenor, and Myrtle Catherine; that her husband sometimes did work for other people when not fishing; that the fishing season was from the middle of April to the middle of October; that her home has always been on the land since 1876, but after 1883, she sometimes resided in Miller in the winter to school her children, and was away from the lake a few times during confinement; that when away she always left some one in charge of the place and her absence was only temporary; that she moved to Indiana Harbor in November, 1902, and her husband died there in the following month; that she moved back to the lake in February, 1904, and has continued to reside there on the land in question; that she left some things at the home on the lake when she went to Indiana Harbor and that her sons were with her there a part of the time, and part of the time were at the lake fishing for her, and she saw them at the lake every week or two; that at no time during her occupancy of the land did she see or hear of any of the appellants being on the land; and that neither appellee nor any one in her behalf had paid the taxes on the land.

The evidence did not show that any one had paid taxes on the land in controversy prior to 1886, but showed that after that time appellants had paid taxes on the land in section 31 north of the Indian boundary line. The evidence also showed that the land had not been fenced except some small portions near the buildings during a portion of the time, but there was evidence tending to show that the blazing along the west line was still observable ten or fifteen years after appellee first took possession of the land. There was evidence tending to show that Hitt caused a survey of a portion of the land in 1889, but appellee denied any knowledge thereof and stated that the first time she had any information about an attempt to survey was in 1904; and all she knew about that was that she saw men with a "machine" on their backs. There was evidence tending to prove that the Hitts had made some leases of small portions of the lake front along this land for small or nominal considerations in 1901.

Appellee asserts that the facts of this case shown by the evidence, including the location, nature and character of the land, are sufficient to establish her title to all the land described in her amended complaint on two grounds, viz.: (1) She had actual adverse possession for over twenty years; (2) she took and held adverse possession of the land under color of title, from March, 1876, to the present time.

Beyond question, the evidence is sufficient to support the verdict of the jury on the propositions that appellee had open, notorious, continuous, uninterrupted, hostile possession, under a claim of ownership, for over twenty years, of at least a portion of the land in controversy. There is a conflict of evidence on some elements of her adverse possession, but no failure of proof of any material element and, under the well-established rules of appellate procedure, this is sufficient to sus-

tain the verdict on such propositions.    *McBeth* v. *Wetnight* (1914), 57 Ind. App. 47, 106 N. E. 407, 409; *Worthley* v. *Burbanks* (1897), 146 Ind. 534, 539, 45 N. E. 779.

It is not denied by appellant that, if appellee held adverse possession of all the land in question for the requisite time, or held such possession of a portion of it under color of title, thereby she may have acquired title to the whole tract.   But appellant asserts that there is a total failure of evidence to support either of such propositions. We first consider the question of color of title. Appellants contend that color of title can only be shown by an instrument in writing that purports to convey the title to the claimant or some one in privity of interest with him, but which for some reason is ineffectual to convey title.   On the other hand, appellee asserts that "color of title is the claim of ownership under which a disseizor of land may enter, based on some transaction or relation which creates in him an apparent title, but which in fact is no title.   It may grow out of a written instrument or matter *in pais.*"   As presented by the briefs, the real question at issue on this subject will be determined by ascertaining whether in this State, in a suit of this character, color of title may be shown without an instrument in writing purporting to convey the real estate in question to the one asserting title or to some one in privity of interest with such person.   Our examination of the numerous decisions and law books which deal with the question of color of title makes it apparant that the authorities are not in harmony on the subject.   Some states have statutes which require color of title to be evidenced by an instrument in writing purporting to convey title to the claimant or to some one in privity of interest with him; while others, without such statutes, have by deci-

sions adopted the same rule. On the other hand, many of our states have by decisions of the courts of last resort held that color of title may be shown by matter *in pais;* that a parol gift of land followed by adverse possession of the tract for the requisite time will suffice to establish title to the whole tract. In some cases it is held that the possession of the donee is referable to the gift and extends to the limits of the boundaries of the land given; while in other cases it is held that possession for the requisite time by the donee will give title to the whole tract where there are acts, signs or indications from which the extent of territory or boundaries may be ascertained. 2 C. J., "Adverse Possession" §§326-393. As supporting the view that there may be color of title without an instrument in writing purporting to convey the land to the one asserting title by adverse possession, we cite the following: *Bell* v. *Longworth* (1855), 6 Ind. 273; *Vancleave* v. *Milliken* (1859), 13 Ind. 105, 108; *Wilson* v. *Campbell* (1889), 119 Ind. 286, 290, 21 N. E. 893; 1 R. C. L. 708 and cases cited; *M'Call* v. *Neely,* 3 Watts (Pa.) 69, 72; *Brown* v. *Norvell* (1910), 96 Ark. 609, 613, 132 S. W. 922; *Wilkinson* v. *Bottoms* (1911), 174 Ala. 122, 124, 56 South. 948; *Rannels* v. *Rannels* (1873), 52 Mo. 108, 113; *Hughes* v. *Israel* (1881), 73 Mo. 538, 547; *McClellan* v. *Kellogg* (1856), 17 Ill. 498, 501; *Teabout* v. *Daniels* (1874), 38 Iowa 158, 161; *Niles* v. *Davis* (1883), 60 Miss. 750; *Davis* v. *Davis* (1891), 68 Miss. 478, 480, 10 South. 70; *Taylor* v. *Buckner* (1819), 2 A. K. Marsh. (Ky.) 18, 12 Am. Dec. 354; *Green* v. *Kellum* (1854), 23 Pa. St. 254, 62 Am. Dec. 332, 333; *Tennessee, etc., R. Co.* v. *Linn* (1898), 123 Ala. 112, 125, 26 South. 245, 82 Am. St. 108; 2 Smith, Leading Cases (8 Am. ed.), 711; 2 C. J. 196, §393 and cases cited, 198, §399. Buswell, Limitations and Adverse Possession, §§264, 265, 267, 268. Sedgwick & Wait, Trial of Titles, §§77, 2773, 1 Am. and Eng. Ency. Law 848.

It has been held in this State, and the weight of authority elsewhere is, that a deed void on its face may give color of title as effectually as though the deed were regular on its face, but void for reasons *dehors* the instrument. *McBeth* v. *Welnight, supra; Irey* v. *Markly* (1892), 132 Ind. 546, 32 N. E. 309; *Wright* v. *Kleyla* (1885), 104 Ind. 223, 224, 4 N. E. 16; *King* v. *Carmichael* (1893), 136 Ind. 20, 27, 35 N. E. 509, 43 Am. St. 303; *Sims* v. *Gay* (1887), 109 Ind. 501, 504, 9 N. E. 120; *Walker* v. *Hill* (1887), 111 Ind. 223, 236, 12 N. E. 387; 2 C. J. 176, §338, and cases cited under note 87. The foregoing rule ·is generally held applicable even in states that require color of title to be shown by conveyance in writing. The reason is that color of title does not give title, but its principal office is to define the extent of the land claimed by the one asserting title. For this reason it has generally been held that a deed purporting to convey real estate, but which gives no description or means of identifying the real estate will not give color of title, because it is wholly wanting in the essential characteristic of color of title whether shown by an instrument in writing or by matter *in pais*. *Wilson* v. *Johnson* (1896), 145 Ind. 40, 49, 38 N. E. 38, 43 N. E. 930; 2 C. J. §§323, 325, 331, pp. 168, 172; §339, p. 177; §364, p. 189; Sedgwick & Wait, Trial of Titles §772, p. 582; *Napier* v. *Little* (1911), 137 Ga. 242, 73 S. E. 3, 38 L. R. A. (N. S.) 91, 96; Ann. Cas, 1913A, 1013; *Randolph* v. *Casey* (1897), 43 W. Va. 289, 293.

The terms "color of title" and "claim of title" have been somewhat confused in many decisions and by some text-writers. Color of title is that which has the semblance or appearance of title, either legal or equitable, but which is in fact no title. Claim of title exists where one enters upon and occupies land with the intent to

hold it as his own against the world, irrespective of any foundation for such claim.   Claim of title without color of title may ripen into title to the land actually occupied by such claimant; but with

16. color of title, his title may be perfected to the whole tract indicated by the instrument or state of facts which give color of title, though he be in actual possession of only a part of such tract, but the part possessed must be an integral portion of the whole tract indicated by the facts or instrument by which color of title is shown.    *McBeth* v. *Wetnight, supra; Bell* v. *Longworth, supra; Wilson* v. *Johnson, supra; Wilson* v. *Campbell, supra; City of Noblesville* v. *Lake Erie, etc., R. Co.* (1891), 130 Ind. 1, 5, 29 N. E. 484; 1 R. C. L. 706, 707; 2 C. J. §§323, 324, p. 168; *Allen* v. *Mansfield* (1891), 108 Mo. 343, 348, 18 S. W. 901; *Bartlett* v. *Secor* (1883), 56 Wis. 520, 525, 14 N. W. 714.

To be effective in perfecting title by adverse possession, the person holding the legal title must have either actual or constructive notice of

17. the "claim" of right, or title, asserted by the one in possession of the property; but it is not essential that he have knowledge of the existence of "color of title" in such person to give the one in possession the benefit of "color of title", if he in fact has color of title to the real estate in his possession.    *Tennessee, etc., R. Co.* v. *Linn, supra;* 1 R. C. L. 707.

An instrument in writing or a survey used by the donor, or referred to by him, in making a parol gift of lands under and in pursuance of which

18. the donee has taken possession of the lands so given him, will give color of title, though it does not purport to convey the land to such donee, provided it gives such description of the land given as will enable the donee to ascertain therefrom the boundaries and extent of the territory

included in such gift. *Bell* v. *Longworth, supra; Sedwick* v. *Ritter* (1891), 128 Ind. 209, 213, 27 N. E. 610; *Rannels* v. *Rannels, supra; Hughes* v. *Israel, supra; M'Call* v. *Neely, supra; Taylor* v. *Buckner, supra; Tennessee, etc., R. Co.* v. *Linn, supra; Green* v. *Kellum, supra; McClellan* v. *Kellogg, supra;* 2 C. J. §§362-364, p. 188, §§370, 371, p. 191, §§388-390, 392, pp. 189-190. Unless there is a statute requiring it, the grantor or donor of lands, or one from whom it is claimed by descent, may confer color of title without himself having any kind or semblance of title to the property. 2 C. J. §§351, 352, pp. 184-185, §367, p. 190, §399, p. 198; *O'Donahue* v. *Creager* (1889), 117 Ind. 372, 376, 20 N. E. 267; *Wright* v. *Wright* (1884), 97 Ind. 444, 447; *Bell* v. *Longworth, supra; Teabout* v. *Daniels, supra;* 1 Am. and Eng. Ency. Law 852; *Henry* v. *Brown* (1904), 143 Ala. 446, 39 South. 325; *Crowder* v. *Doe* (1909), 162 Ala. 151, 50 South. 230, 136 Am. St. 17. A forged deed, or a lost deed, the contents of which have been proven, may give color of title. 2 C. J. §§367-371, pp. 190, 191; *Harrison* v. *School Dist., etc.* (1886), 89 Mo. 184, 187, 1 S. W. 30; *Oliver* v. *Pullman* (1885), (C. C.) 24 Fed. 127, 129. Where there was an instrument in writing describing the land conveyed or given to the claimant, if such instrument is lost, or is beyond the jurisdiction of the court, the contents thereof may be proven by parol. 2 C. J. §371, p. 191; *Jones* v. *Levi* (1881), 72 Ind. 586; *Johnson Harvester Co.* v. *Bartly* (1884), 94 Ind. 131.

As giving expression to the views of some of the courts on the general proposition of showing color of title by matter *in pais,* we note the following: *Bell* v. *Longworth, supra,* is the only case in Indiana that is a clear and

definite authority on the proposition, though the doctrine is recognized in other decisions already cited in this opinion under the general proposition, *supra*. It appears from the opinion in *Bell* v. *Longworth, supra*, that Harrison and Beaman in 1817, purchased from the United States Government a quarter section of land for which they paid one-fourth of the purchase price of $2 per acre and obtained credit for the balance. Harrison and Beaman assigned their interest in the land to Paxon and Pearson, who, having failed in business, for a valuable consideration assigned by an instrument in writing their "right and claim" to the land (describing it) to Nicholas Longworth. Longworth thereafter paid the government the balance of the purchase money, but the original certificate to Harrison and Beaman had been assigned to Paxon and Pearson, and there was not in the land office any evidence of Longworth's purchase, so that the patent was issued to Paxon and Pearson instead of Longworth. Bell and Kiger in 1852 by virtue of deeds from some of the heirs of Paxon, executed in 1851, entered upon a part of the cleared land and sought to hold it by force. In 1822 Longworth had appointed an agent to take charge of the land, who was shown to have lived near to or upon the land and to have caused portions of it to be cleared and fenced, cut timber from it and prevented others from doing so, and exercised other acts of control over the real estate, which was mostly wooded land, and part of it had not been enclosed. Prior to the litigation Longworth had conveyed an undivided one-half of the land to Miles. On this state of facts in considering the question of the right of Longworth and Miles to hold possession of all the land as against Bell and Kiger, the court said: "Longworth and Miles were un-

doubtedly in possession of some portion of the quarter-section upon which Bell and Kiger made entry; were they of all? * * * It will be appropriate here, then, to institute the inquiry, whether Longworth went into possession under color of title; for if he did, his possession would extend to the whole quarter-section, under the assignment from Paxon and Pearson; and should we so conclude, it will be unnecessary for us to decide the other point, as to whether such acts were performed—such a possession taken as would embrace the whole tract, regarding Longworth as a mere intruder, though, we will remark, that such is the inclination of our opinion. What, then, in a question of adverse possession, constitutes color of title? It was held in some of the earlier cases in New York, and has been in cases following those elsewhere, that color of title was that which appeared *prima facie* a good, while it was in fact a defective, title. But this doctrine is without reason, and is being abandoned. When a party is in possession of land, claiming an adverse title, the question must always arise, to what extent does his claim reach, what lands does his claim of title cover? And where there is nothing but naked possession to evidence it, his title must, from necessity, be limited to the lands over which he has exercised a visible authority, known to others, as owner; to those, in short, from which he has excluded the former owner and others. A man can not go, solitary and alone, to the prairies or forests of the west, set himself down in the middle thereof, and claim that he possesses all, to an undefined extent, not then actually possessed by some one else. He must be limited to that portion over which he exercises palpable and continuous acts of ownership, as being the quantity which he claims as his

own, there being no other evidence, in such case, to enable us to determine the quantity. But where a party is in possession under and pursuant to a state of facts which, of themselves, show the character and extent of his entry and claim, the case is entirely different; and such facts, whatever they may be in a given case, perform sufficiently the office of color of title. They evidence the character of the entry and extent of the claim, and no colorable title does more; for such title alone does not give right; and possession under such facts as above indicated would be constructive notice, on general principles of law, to all the world, of the character of the claim of title. Hence, it has been decided that possession, under a 'sale or gift of land by parol', is under color of title. *Sumner* v. *Stevens* 6 Met. 337.—Angell on Limitations, 3 Ed., p. 503, and cases cited. To the same effect, *Fain* v. *Garthwright*, 5 Georgia R., cited in note on page 504, Angell, *supra.* So, under an assigned land-office certificate, transferred in this state in 1817; *Holcroft, et al.* v. *Hunter*, 3 Blackf. 147; a case somewhat similar to the present. Under these decisions, it is perfectly clear that Longworth went into possession under color of title, and that his possession extended to the whole quarter. The assignment, in this case, from Paxon and Pearson, whether valid or not, was doubtless believed to be so. It was under it that Longworth entered. It shows his entry to have been in good faith, on claim of right, and defines the exact extent, the exact boundaries claimed to; and his possession, under the claim, having been continuous for more than twenty years, has perfected his title to the whole quarter."

Appellants contend that because the court in the case from which we have just quoted indicates that it inclined to the view that the evidence was

sufficient to show actual possession of the whole tract, and that, if necessary to a decision of the case it might so hold, we can not consider the case as an authority on color of title. But, we are compelled to hold the contrary of this view, for the reason that the court expressly states that it is unnecessary to decide the point of actual possession of the whole tract and decides that Longworth was in possession under color of title and that a "party in possession under and in pursuance of a state of facts which of themselves show the character and extent of his entry and claim * * * perform sufficiently the office of color of title .* * * and no colorable title does more * * *. Hence * * * possession under a sale or gift of land by parol is under color of title."

The doctrine of this case was approved in *Vancleave* v. *Milliken, supra,* though there was in that case a written instrument. In *Wilson* v. *Campbell, supra,* the claimant was in possession of land under a parol agreement and his title was sustained, but the language of the case is not clear as to whether the court decided the case on the theory of actual possession of the whole tract or by reason of color of title, for it is said, "but the adverse possession under claim and color of right gave him a complete and perfect title." There are cases in Indiana where color of title was given by written instrument, but they are not in point here and any expressions incidentally used in connection with a discussion of color of title so shown in no sense overrule or modify the clear and positive decision in the case of *Bell* v. *Longworth, supra,* which has not been overruled or modified in any sense and is the law in this State on the question decided.

In *Taylor* v. *Buckner, supra,* the Supreme Court

of Kentucky said: (p. 356) "And if the possession creates a bar to any extent, we have no doubt it must be so considered for the whole of the land now in contest. For, although Buckner is not proven to have had any written evidence of title when he entered upon the land, and although he may not have been invested with a regular authority from Stephens to enter, yet, as he is proven to have entered after ascertaining the boundary of Stephens, claiming under him, he must, upon the principle which has invariably governed this court, have gained the possession according to the boundary of Stephens; and as that boundary includes all of the land in contest, the court below decided correctly, upon the facts assumed, in instructing the jury to find for the appellee." In *M'Call* v. *Neely, supra,* the court, in speaking of color of title, said: "The words do not necessarily import the accompaniment of the usual documentary evidences; for though one entering by a title depending on a void deed, would certainly be in by color of title, it would be strange if another entering under an erroneous belief that he is the legitimate heir of the person last seized, should be deemed otherwise: and it would be stranger still if his alienee were deemed to have more color of title than he had himself. To give color of title, therefore, would seem not to require the aid of a written conveyance, or a recovery by process and judgment, for the latter would require it to be the better title. I would say that an entry is by color of title where it is made under a *bona fide* and not pretended claim to a title existing in another. It is impossible to say therefore that a disseisor claiming to be the true owner of a survey, as he may in fact be without being named in the warrant, does not enter by color

of title." In *Brown* v. *Norvell, supra,* the court in disposing of a case involving a parol gift of land said: "But the proof shows that Earle intended to give and did give her the whole tract; and her possession, being referable to the gift extends to the limits of the boundaries of the land so given her." In *Lebanon Min. Co.* v. *Roger* (1884), 8 Colo. 34, 5 Pac. 661, it is said: "It is the better doctrine that both color and claim of title may exist without any instrument provided such claim or color be in good faith; in the absence of writings there must be some visible act, sign or indication showing the extent of the boundaries of the land claimed."

We have yet to determine whether there is any evidence to support the inference or finding that appellee was in actual possession of all the land described in her amended complaint and indicated by the boundaries to which she testified. The question of such possession was an issuable fact in the case and the verdict of the jury is a finding in her favor on that issue, and must be sustained if the evidence warrants such inference. The lake was the boundary on the north and the river on the south and east. The section line, along which there is evidence to show the trees were blazed at appellee's suggestion in 1876, was the west boundary line. The character of the land, the use made of it and the extent and character of appellee's possession are shown by our statement of the evidence and need not be repeated. It has been held in this State, and the rule seems to be generally recognized and followed, that the character of the real estate is of controlling influence in determining what acts of ownership, use and occupancy, will suffice to show actual possession of the whole tract claimed. If

the possession and other acts of ownership are such as are reasonably adapted to, and in keeping with, the beneficial use that may be reasonably made of such lands, and such as are usually practiced by owners of similar lands in that vicinity at the time in question, and such possession and acts of ownership are exercised in disregard of all conflicting claims without asking permission of any one, they are sufficient to warrant the inference of actual possession of the whole tract to which such acts relate.  *Moore* v. *Hinkle* (1898), 151 Ind. 343, 345, 50 N. E. 822; *Worthley* v. *Burbanks, supra; Dyer* v. *Eldridge* (1894), 136 Ind. 654, 661, 36 N. E. 522; *Cutsinger* v. *Ballard* (1888), 115 Ind. 93, 97, 36 N. E. 522; *Collett* v. *Board, etc.* (1889), 119 Ind. 27, 34, 21 N. E. 329, 4 L. R. A. 321; *Tolley* v. *Thomas* (1910), 46 Ind. App. 559, 564, 93 N. E. 181; *Bell* v. *Longworth, supra; L, Hommedien* v. *Cincinnati, etc., R. Co.* (1889), 120 Ind. 435, 439; *McBeth* v. *Wetnight, supra; Rennert* v. *Shirk* (1904), 163 Ind. 542, 548, 72 N. E. 546; *Rothschild* v. *Leonhard* (1904), 33 Ind. App. 452, 461, 71 N. E. 673; 1 R. C. L. p. 717.  The adverse possession which affects the right of the true owner is that which exists and appears on the land itself, and where the occupancy is such as to indicate ownership, and is such that upon inquiry by the real owner he could obtain information of the occupant's claim of title, and the character and extent of his possession, it is sufficient. *Dyer* v. *Eldridge, supra; Worthley* v. *Burbanks, supra; Cutsinger* v. *Ballard, supra; Roots* v. *Beck* (1887), 109 Ind. 472, 475, 9 N. E. 698; *Tennessee, etc., R. Co.* v. *Linn, supra.*

In *Worthley* v. *Burbanks, supra,* 540, the Supreme Court considered lands of much the same nature and character as those in controversy here, and said:

"It is manifest that there can be no absolutely unvarying rule with reference to every class of real estate, and that the required occupancy of or dominion over a section of desert lands, or of a mining camp, a non-navigable lake, a prairie, a forest, a fertile farm in a high state of cultivation, or a town lot would not answer as to a lot in the business center of a populous and thrifty city. As said in *Ewing* v. *Burnet*, 11 Peters, 41: 'So much depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it, that it is difficult to lay down any precise rule adapted to all cases.' And, as said in the early case of *Robison* v. *Swett*, 3 Me. 316, where 'lands being wild and uncultivated, the jury were not to expect the same evidence of occupancy which a cultivated farm would present to them.' * * * 'The kind of possession which will be sufficient must depend largely upon the character of the land, the locality, and the purposes to which it can be put. * * * And where the land is so situated as not to admit of any permanent useful improvement, neither residence, cultivation, nor actual occupation are necessary where the continued claim to the premises is evidenced by notorious acts of ownership, such as a person would not exercise over lands which he did not own'." In *Tolley* v. *Thomas*, *supra*, 564, this court said: "From what is thus said we must infer actual possession is such possession as is consistent with the character of the land in question, its locality and its suitable uses. The facts disclosed by this answer show that the subject-matter of this action, until about the year 1890, was wild, marsh land, and for most of the time under water, then and now unfit for cultivation or human habitation. Appellee

asserted every possible act of ownership, and assumed such dominion as the quality of the land would permit, to the exclusion of all others, and put it to every use to which it was adapted, and that, too, without asking permission, and in disregard of all other conflicting claims. * * * The sufficiency of the answer is supported by" (citing authorities). In *Dyer* v. *Eldridge, supra* (p. 658), the Supreme Court said: "Actual possession of lands under a claim of title is sufficient notice of such claim to put others upon inquiry as to the extent and nature of the claim."

Considering the character of the land and the beneficial use to which it might reasonably have been put during the twenty years from 1876 to 1896, we hold that there is evidence from which the jury might reasonably have found that appellee had actual, exclusive possession of all the land described in her amended complaint, and since the jury so found we can not disturb the verdict on the weight of the evidence. From the foregoing propositions we conclude: (1) That appellee in good faith took and held uninterrupted possession of the land in controversy 'for over twenty years under color of title shown by the state of facts under which she took and held such possession; (2) that the deed placed in appellee's possession by her alleged donor, though not purporting to convey title to her, when considered in connection with the gift to, and possession by, appellee, of the real estate described in such deed, was sufficient to give color of title to appellee as to all the real estate described therein, and of which she took and continued to hold adverse possession; (3) that the evidence is sufficient to warrant the inference of actual, continuous, hostile possession of all the land in controversy for over twenty years

from 1876. From these conclusions, it follows that the bar of the statute became complete. in 1896 in favor of appellee as against all claimants of the land in controversy either on the theory that she has color of title, or independent of the question of color of title, that she had such actual, visible, hostile and uninterrupted possession, under claim of ownership as to perfect her title and to render immaterial the acts or claims of other persons subsequent to 1896. *Burr* v. *Smith* (1899), 152 Ind. 469, 472, 53 N. E. 469; *Roots* v. *Beck, supra; State* v. *Portsmouth Savings Bank* (1886), 106 Ind. 435, 461, 7 N. E. 379; *Holcroft* v. *Hunter* (1832), 3 Blackf. 147, 152; *Rennert* v. *Shirk, supra; Jackson* v. *Creek* (1911), 47 Ind. App. 541, 555, 94 N. E. 416; *May* v. *Dobbins* (1906), 166 Ind. 331, 333, 77 N. E. 353; *Dyer* v. *Eldridge, supra,* 660; *Puterbaugh* v. *Puterbaugh* (1892), 131 Ind. 288, 294 30 N. E. 519.

Appellants contend that appellee was not a competent witness to testify to the alleged transaction with Mr. Bingham in regard to the gift and possession of the land and the contents of the deed appellee claims to have been placed in her possession by him, and also in regard to her subsequent possession and use of the land. The ground of the objection was that appellant Mathieu claimed an interest in the real estate in controversy by inheritance from her parents, Mr. and Mrs. Beaubien, and that one of her parents from whom she inherited did not die until 1904; that under §522 Burns 1914, §499 R. S. 1881, appellee was incompetent to testify to anything relating to or affecting the land that occurred prior to 1904. The section of the statute is as follows: "In all suits by or against heirs or devisees, founded on a contract with or demand against the

ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor." In order to render appellee incompetent to testify in her own behalf over the objection of appellant Mathieu it must appear not only that the suit was against Mrs. Mathieu, as heir of a deceased former owner of the land who was alive at the time the transactions occurred which were sought to be given in evidence, but that the suit was *"founded on a contract with or demand against the ancestor,* to obtain title to, or possession of, property * * * of, or in right of such ancestor." The phrase "or to affect the same in any manner" refers to the property mentioned in the statute and does not bring in a new class of cases not "founded on a contract with or demand against the ancestor." The case at bar is not founded on any contract with or demand against the deceased parents of Mrs. Mathieu, and appellee was not incompetent to testify for the reasons aforesaid. *Taylor* v. *Duesterberg* (1887), 109 Ind. 165, 171, 9 N. E. 907; *Durham* v. *Shannon* (1888), 116 Ind. 403, 405, 19 N. E. 190, 9 Am. St. 860; *Snyder* v. *Frank* (1913) 53 Ind. App. 301, 308, 101 N. E. 684; *Waltz* v. *Waltz* (1882), 84 Ind. 403, 409; *Cross* v. *Herr* (1884), 96 Ind. 96, 99; *Louisville, etc., R. Co.* v. *Thompson* (1886), 107 Ind. 442, 456, 8 N. E. 18, 9 N. E. 357; 57 Am. Rep. 120; *Cincinnati, etc., R. Co.* v. *Cregor* (1898), 150 Ind. 625, 630, 50 N. E . 760 *Sloan* v. *Sloan* (1898), 21 Ind. App. 315, 319, 52 N. E. 413; *Michigan Trust Co.* v. *Probasco* (1902), 29 Ind. App. 109, 123; 63 N. E. 255; *Zimmerman* v. *Beatson* (1907), 39 Ind. App. 664, 667, 79 N. E.

518, 80 N. E. 165; *Goodwin* v. *Bentley* (1903), 30 Ind. App. 477, 483, 66 N. E. 496.

There are some expressions in the decided cases dealing with §§521, 522 Burns 1914, §§498, 499 R. S. 1881, which may indicate a different rule from what we have declared, but such expressions or holdings, if they amount to such, are out of harmony with the prevailing weight of authority, as shown by the decisions of both our courts of last resort, and as indicated by this court in the recent case of *Snyder* v. *Frank, supra.* The general purpose of both said sections is identical and was expressed by Mitchell, J., in *Taylor* v. *Deusterberg, supra,* 171, as follows: "A contract or matter in which the decedent in his lifetime never had any concern or interest, can not be so involved in a suit by his personal representative as to preclude the parties interested in the transaction, although it may come collaterally in question, from upholding it by their own testimony. If it were otherwise, the death of a stranger, who presumably could not have testified concerning the matter if living, would close the mouths of the only persons interested in the contract when it was made. The true spirit of the statute seems to be, that when a party to a subject-mtater or contract, in action, is dead, and his rights in the thing or contract have passed to another who represents him in the action or proceeding which involves such contract or subject-matter, to which the deceased was a party, the surviving party to that subject shall not testify to matters occurring during the lifetime of the decedent." In *Sullivan* v. *Sullivan* (1893), 6 Ind. App. 65, 69, 32 N. E. 1132, in speaking of §522, *supra,* this court said: "That section contemplates only suits between heirs or by or against such founded on a demand against the ancestor to obtain title to or possession of his prop-

erty or to affect it in any manner." Our conclusion on this subject makes it unnecessary to consider at length the propositions that appellant Mathieu only claimed to own a small undivided interest by inheritance and that if her objection should have been sustained, if she were the only party to the suit the evidence could not be properly excluded as against her coappellants on the grounds urged by her, since they did not claim to own the property by inheritance. The evidence should in such instance be admitted and if not competent against some of the defendants, it should be properly limited by the court by instructions to the jury. *Benjamin* v. *McElwaine-Richards Co., supra; Turpie* v. *Lowe* (1902), 158 Ind. 314, 325, 62 N. E. 484, 92 Am. St. 310; *Thistlewaite* v. *Thistlewaite, supra.*

Most of the evidence objected to which was given by appellee and members of her family, and by other witnesses, related to declarations made and acts performed while in possession of the land, relating to the character and extent of appellee's possession and the use and control of the land by her and such members of her family under her directions, and were competent as a part of the *res gestae* of the continuing act of possession, to qualify, explain and characterize such possession. *Creighton* v. *Hoppis* (1885), 99 Ind. 369, 374; *Welker* v. *Appelman* (1909), 44 Ind. App. 699, 711, 90 N. E. 35; *Gifford* v. *Gifford* (1915), 58 Ind. App. 665, 107 N. E. 308, 312.

The questions relating to the instructions need not be considered in detail. Most of the questions suggested are answered by our decision of the questions already decided. The instructions given, considered as a whole, fairly and accurately in-

formed the jury as to the law applicable to the case under the pleadings and evidence.

Some question is suggested as to the jurisdiction of the Laporte Superior Court over a portion of the land in controversy on the ground that the amended complaint filed in the Laporte Superior Court included some land not described in the original complaint filed in the Lake Circuit Court. The verdict returned in the Lake Circuit Court before the change of venue was taken contained a description identical with that in the amended complaint. The original complaint is not set out in the transcript from the Lake Circuit Court. The filing of the amended complaint was not the commencement of a new or different suit, nor is it even claimed that it states a different cause of action from that stated in the original complaint. It does not appear that appellants were prejudiced, misled or deprived of any right or defense by the amendment, which was fully authorized both by statute and decisions. §403 Burns 1914, §394 R. S. 1881. *Hillyard* v. *Robinson* (1913), 53 Ind. App. 107, 110, 101 N. E. 341, and cases cited. The amendment of the description, if inaccurate or incomplete as to all the real estate involved in the controversy, was legitimate and no error was committed in permitting it to be made. Furthermore the description in the original complaint, which was offered in evidence, though somewhat less definite, may be reasonably construed to include the identical land described in the amended complaint, and the description in the amended complaint as only a more definite description of the same real estate.

The contention can not be upheld that the verdict is not sustained by sufficient evidence on the ground that it conclusively shows that the possession was

in appellee's husband and not in her and that 32. appellant's predecessors were in actual peaceable possession in 1876, when appellee moved on the land. The complaint avers that the possession was taken and held by appellee and there is evidence tending to prove such allegation. The evidence also tends to show that from the first she took possession as owner and openly, by words and acts, asserted her title against all the world; that she was continually in open, hostile possession, and that inquiry or observation by the real owners of the legal title would have given them knowledge of the character of her possession and her claim of title. A number of disinterested witnesses gave evidence showing her possession, use and claim of ownership, from 1876 to the time of the trial, of the identical land described in the amended complaint. In addition to the testimony already set out appellee testified that soon after Mr. Bingham left: "I told Mr. Dutcher the land was given to me and I proposed to move on it and live on it and I was going to do so." The evidence shows that in a very short time the west line was blazed, the cabin was built, and she and her husband moved on the land and continued to reside there for more than twenty years claiming that she owned the land. The fact that her husband drove trespassers from the land does not necessarily show he was claiming to own it instead of his wife. She testified that she directed him to keep trespassers off the land, and other witnesses testified to his driving trappers from the land, asserting at the time that "this is our land." This and other testimony of similar import may reasonably be construed to support appellee's claim of ownership and adverse possession.

The fact that she was a married woman did not preclude her from taking and holding the ex-

clusive possession of the land. Her marital relations were proper to be considered along with the other evidence but there was ample evidence from which the jury might properly find that possession was taken by appellee under claim of ownership, and that she continued to so hold and to occupy the land for over twenty years. *Clark* v. *Gilbert* (1872), 39 Conn. 94.

We have in effect, if not in detail, passed upon all the numerous questions presented by the briefs. There is no harmful error shown in the admission or exclusion of evidence or in the giving or refusal of instructions. The evidence is conflicting on many important propositions, but there is no failure of evidence. Under our rules of appellate procedure, this court can not weigh or ignore the evidence. The jury has a wide latitude in drawing inferences from evidence, and where any reasonable inference has been drawn therefrom it is conclusive in this court. There is ample evidence from which the jury may reasonably have found every essential fact to support the verdict. The case seems to have been fairly and impartially tried and no reversible error is shown.

Judgment affirmed.

Shea, C. J., Ibach, P. J., Caldwell, Moran and Hottel, JJ., concur.

Note.—Reported in 109 N. E. 456. Color of title, what constitutes, in order to sustain claim of adverse possession, see 14 Am. Dec. 580; 88 Am. St. 701; also, 1 Cyc 1082, 1085. Amendment of pleading respecting description of land, see 14 Ann. Cas. 455.